L STEWART, Judge.
The parents of F.H., the minor child, appeal the termination of their parental rights by the trial court. For the following reasons, we affirm.
FACTS
The minor child, F.H., was born to Freddie Walker and Sherry House on December 12, 1996. The child was adjudicated “failure to thrive” because of his inability to gain weight. In fact, when the child was six months old, his weight was only 13 pounds, 9 ounces. On January 23, 1998, the juvenile court ordered the child into the temporary custody of the Department of Social Services, State of Louisiana (DOSS). It is important to note that Sherry House is mentally retarded with an IQ of 62; however, her mental condition was not a factor in the court’s decision to remove F.H. from the home. The DOSS prepared a case plan for each parent detailing the goals, conditions, and visitation schedules for each parent. The ultimate objective of the DOSS plan was to reunite F.H. with his natural parents. However, on March 3, 2000, the DOSS filed a “Petition for Termination of Parental Rights” alleging that the parents had failed to comply with the terms of the DOSS case plans for each of them. On February 28, 2001, the trial judge terminated the parental rights of Freddie Walker and Sherry House. Both parents have appealed.
DISCUSSION
In a termination of parental rights case, the state must prove all the elements of its case by clear and convincing evidence. La. Ch. C. art. 1035; State in the Interest of L.L.Z. v. M.Y.S., 620 So.2d 1309 (La.1993); State in the Interest of S.C. v. D.N.C., 26,104 (La.App.2d Cir.6/22/94), 639 So.2d 426, writ denied, 94-1977 (La.11/4/94), 644 So.2d 1061. The evidence |2must allow the conclusion that termination is in the best interest of the child. State in the Interest of S.C. v. D.N.C., supra; State in the Interest of A.M.M., 622 So.2d 1217 (La.App. 2d Cir.1993).
A trial court’s factual determinations, including whether a parent is unfit and whether there is a reasonable expectation of reformation, will not be set aside in the absence of manifest error. State in the Interest of D.T. v. K.T., 29,796 (La.App. 2 Cir.6/18/97), 697 So.2d 665; State in the Interest of TD v. Webb, 28,471 (La.App.2d Cir.5/8/96), 674 So.2d 1077; State in the Interest of S.C. v. D.N.C., supra. Great weight is attached to the exercise of the trial judge’s discretion, which will not be disturbed on review if reasonable men could differ as to the propriety of the trial court’s action. On the other hand, the discretion vested in the trial court must be exercised in whole-hearted good faith and be guided by the statutes, not by the court’s private opinion of what the statute ought to be. Where the exercise of discretion is arbitrary and not judicial, and the judgment is unjust, it will be set aside. State v. Talbot, 408 So.2d 861 (La.1980), on rehearing; State of Louisiana in the Interest of KLB v. Biggs, 29,512 (La.App.2d Cir.2/28/97), 690 So.2d 965.
La. Ch. C. art. 1015 provides the grounds for the involuntary termination of parental rights. In his written reasons for judgment, the trial judge found that termination was proper under Subparagraph (5) of La. Ch. C. art. 1015 (“Section 5”). La. Ch. C. Art. 1015 provides, in pertinent part:
The grounds set forth in the petition must meet all of the conditions of any one of the following Paragraphs:
*1126 ⅜ ⅝ ⅜ ⅜ ⅜ ⅜
|a(5) Prior adjudication as a child in need of care and removal from the parental home
(a) One year has elapsed since a child was removed from the parent’s custody pursuant to a court order in a child in need of care proceeding and placed either in the custody of an agency or individual.
(b) The parent is now unfit to retain parental control, and there is no reasonable expectation of his reformation in the foreseeable future.
(c) The department has made every reasonable effort to reunite the child with his parents to no avail but now recommends that reunification would not be in the best interests of the child.
Each element of Section 5 must be satisfied by clear and convincing evidence. From our review of the record, we find that the state satisfied its burden of proof as to both Freddie Walker and Sherry House.
It is undisputed that the first element is satisfied as more than one year has elapsed since the child’s removal in January, 1998. Thus, we must focus on whether the remaining elements have been met by clear and convincing evidence as to each parent.
The second element requires that the state demonstrate not only that the parent is currently unfit to retain parental control, but that there is no reasonable expectation of reformation in the foreseeable future. Reformation sufficient to prevent termination of parental rights requires that the parent demonstrate a substantial change, such as significantly altering or modifying that behavior which served as the basis for, and resulted in, the state’s removal of the child from the home. State in the Interest of D.T. v. K.T., supra; State in the Interest of TD v. Webb, supra.
A parent who professes an intention to exercise his or her parental rights and responsibilities must take some action in furtherance of the |4intention to avoid having those rights terminated, even when the parent is mentally ill or impaired. State in the Interest of J.L.N., 27,568 (La.App.2d Cir.6/21/95), 658 So.2d 272. See also State in Interest of Four Minor Children v. D.W., 585 So.2d 1222 (La.App. 2nd Cir.1991).
With regard to the parental rights of Sherry House, we find that the trial court was correct in its determination that Sherry House was unfit and had no reasonable expectation of reformation. Ms. House’s case plan required her-to 1) follow the recommendations of a completed substance abuse assessment; 2) remain alcohol and drug free; 3) maintain the parent/ehild relationship by attending and actively participating in all family visits; and 4) strengthening the family bond by cooperating with more frequent visits and ultimately, trial home placement.
The DOSS required “substantial compliance” with the case plan. The trial court concluded that Sherry House had complied with every area of her case plan with the exception of abstaining from alcohol. It was Sherry House’s unsuccessful battle with alcoholism that the trial court pointed to in its 19 page opinion as the reason it was granting the petition to terminate her parental rights. However, despite the court’s reliance on alcoholism as the primary reason for Sherry House to be declared unfit without a reasonable expectation of reformation, the alcoholism alone would not be sufficient grounds for termination of Ms. house’s parental rights. Interestingly, Eddie Turner, the DOSS case worker and supervisor for Sherry House, *1127 testified that the DOSS was prepared to reunite F.H. with his mother if she could remain sober for eight consecutive weeks shortly after the child was removed in 1998.
[¡Nonetheless, an appeal lies from the judgment itself, not the reasons for judgment. When the record contains a reasonable factual basis for the findings of the trier of fact, and those finding are not manifestly erroneous, an appellate court should affirm the judgment made in the lower court. Kirkham v. Pumphrey, 34,349 (La.App.2d Cir.12/20/00), 775 So.2d 634; Wilson v. Wilson, 30,445 (La.App.2d Cir.4/09/98), 714 So.2d 35.
Unfortunately, there are several other ways Sherry House failed to comply with the case plan that were omitted from the trial court’s opinion that would help resolve this difficult case. Sherry not only waged an unsuccessful battle against her alcoholism, but also failed to comply with the part of her ease plan concerning mandatory drug screens. Rebecca Ward, F.H.’s case worker, testified that on several occasions, Sherry would refuse to take drug screens or after she was requested to give a drug screen, leave the building and never return. Furthermore, although she attended more than 50 percent of the scheduled family visits, Sherry failed to demonstrate the necessary parenting skills to best care for F.H. In fact, Kathy Phillips, a foster care worker for DOSS, testified that Ms. House passed out drunk during a visit on August 14, 2000, because she had been drinking while taking her medication. It is also important to note that Sherry was being treated by a dual diagnosis groups because of her mental illness and her alcoholism. Judy Shoemaker, a licensed clinical social worker with the Shreveport Mental Health Center, testified that Sherry’s mental illness was major depressive disorder with psychotic features and alcohol dependence. This condition crippled Sherry’s attempts to beat her alcoholism. Lastly, although the state admits that parenting skills classes hwere not offered to Sherry until around March of 2000, the trial court was correct in determining that despite Sherry’s best efforts to battle her alcoholism, she has been unable to do so in a manner that would constitute substantial compliance with her case plan.
The state met its burden that Ms. House was not only unfit, but that there was no reasonable expectation of reformation. Ms. House has valiantly tried to recover, but sadly the record reveals that she simply has not successfully complied with her case plan. The best interests of the F.H., a child with special needs of his own, are that he be in a safe, stable, and nurturing environment; otherwise there is a risk of substantial harm to the child. His natural mother simply cannot provide that environment.
Unlike Sherry House, there is much less dispute about Freddie Walker’s noncompliance with the case plan. Mr. Walker was a constant absence at planned family visits. He routinely refused drug screens, and demonstrated no interest in gaining the skills necessary to be a parent to F.H. Although he pointed to his job as an excuse for his missing visits and classes, he never provided any information about his employer. There was testimony that perhaps the reason for this lack of information is that Mr. Walker was being paid in cash and wanted to avoid tax problems. However, Mr. Walker was generally noncompliant even when he was not at work. Case workers testified that he smelled of alcohol on several occasions during in home visits, and routinely refused alcohol and drug screens. Freddie Walker also has a significant criminal history and, according to the testimony of Dr. *1128 Lanoski, a penchant for domestic abuse 17involving Sherry House. The court was not in error in finding that Freddie Walker was not in compliance with the case plan.
CONCLUSION
The trial court was not manifestly erroneous in concluding that the state had met its burden by clear and convincing evidence, that Sherry House and Freddie Walker had not substantially complied with their case plans. There is not a reasonable expectation of reformation with either parent. It is in the best interests of the child that he be permanently removed from them custody. Based on the foregoing, we affirm.
AFFIRMED.