JjTHOMAS F. DALEY, Judge.
E.C. has appealed a Juvenile Court judgment terminating her parental rights. For the reasons which follow, we affirm.
FACTS:
M.C., (hereinafter referred to as Marion), was born on January 27, 1992 and her brother M.C. (hereinafter referred to as Marcus) was born on August 24, 1994. The children lived with their mother, E.C. and their maternal grandmother, B.C. in Jefferson Parish. Marion’s father is unknown and Marcus’ father, M.B.[1], lived in Alabama. In 1995, when Marion was three years old and Marcus was 16 months old, the children were removed from the home of their mother and adjudicated children in need of care. They were placed in foster homes where they remained until they [swere reunited with their mother in March of 1997. The family was supervised by the Office of Community Services (hereinafter OCS) until June 1997 and the case was eventually closed.
In August 1999, OCS received a report that the children were living with B.C., their grandmother, who was unable to care for them. B.C. was described as having a broken arm, being “heavily medicated”, and mentally unstable. E.C.’s whereabouts were unknown. The children were *918 placed in the State’s custody by virtue of an Instanter Order dated September 2, 1999.
Given the length of time the children had been in foster care, their ages, and their need for a stable and permanent home, the State moved to terminate E.C.’s parental rights. On May 9, 2000, a Petition for Termination of Parental Rights was filed. The petition alleged that E.C. did not substantially comply with her court approved case plan and that there was no reasonable expectation of significant improvement in E.C.’s condition.
The first day of trial was held on December 18, 2000. Because the trial could not be concluded that day, it was recessed until January 29, 2001. E.C. failed to appear on January 29, 2001, so the trial was continued until February 16, 2001. At the conclusion of trial, the matter was taken under advisement. Judgment was rendered on February 28, 2001, terminating E.C.’s parental rights. E.C. filed her Motion for Appeal on March 8, 2001.
DISCUSSION:
The trial court found grounds to terminate E.C.’s parental rights under Louisiana Children’s Code Article 1015(3)0) and article 1016(5), which read in pertinent part:
|4The grounds for termination of parental rights are:
[[Image here]]
(3) Misconduct of the parent toward this child or any other child of that parent or any other child in his household which constitutes extreme abuse, cruel and inhuman treatment, or grossly negligent behavior bellow a reasonable standard of human decency, including but not limited to the conviction, commission, aiding or abetting, attempting, conspiring or soliciting to commit any of the following:
[[Image here]]
0) Abuse or neglect after the child is returned to the parent’s care and custody while under the department supervision, when the child had previously been removed for his safety from the parent pursuant to a disposition judgment in a child in need of care proceeding:
[[Image here]]
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order, there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and pennanent home.
The grounds for termination under Article 1015(3)(j) requires that the abuse or neglect must occur after the child is returned to the parent’s care, but “while under the department supervision.” In the case before us, the children were no longer under the department’s supervision when the second incidence of neglect occurred. It is undisputed that the file from the 1995 removal had been closed at the time the children were removed in 1999. Thus the trial court erred in finding the grounds for removal under article 1015(3)(j) were present.
However, a finding under any one subsection of article 1015 is sufficient to justify termination of parental rights. State in the Interest of D.T. v. K.T., 29,796 (La.App. 2nd Cir.1997), 697 So.2d 665. *919 The trial court correctly determined that there were sufficient grounds for termination of E.C.’s rights under article 1015(5). Under this provision, parental rights may be terminated if one year has elapsed since a child |swas removed from the parent’s custody and the parent has not substantially complied with a case plan filed by OCS, and there is “no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future.”
In the case before us, the children were removed from the parent’s custody on September 2,1999, and the Petition for Termination was filed on May 9, 2000. The trial judge signed an order appointing counsel for all parties and setting a date for the p'arties to appear and answer the petition. The petition was filed prior to the passage of one year from the time E.C.’s children were taken into custody by the State. E.C. argues the trial court erred in permitting this premature filing. However, we see no error in the trial court’s decision because the Judgment, which terminated parental rights was granted more than a year and a half after the children were removed from the parent’s custody.
The method for proving the elements of article 1015(5) are provided in Article 1036 of the Children’s Code, which provides:
C. Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
(1) The parent’s failure to attend court-approved scheduled visitations with the child.
(2) The parent’s failure to communicate with the child.
(3) The parent’s failure to keep the department apprised of the parent’s whereabouts and significant changes affecting the parent’s ability to comply with the case plan for services.
(4) The parent’s failure to contribute to the costs of the child’s foster care, if ordered to do so by the court when approving the case plan.
(5) The parent’s repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
(6) The parent’s lack of substantial improvement in redressing the problems preventing reunification.
(7) The persistence of conditions that led to removal or similar potentially harmful conditions.
IfiD. Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent’s conduct in the near future may be evidenced by one or more of the following:
(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.
(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.
(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.
The issue of parental compliance with a case plan, the parent’s expected success of rehabilitation, and the expecta *920 tion of significant improvement in the parent’s condition and conduct are questions of fact in .a proceeding for termination of parental rights. State. Ex rel. E.E.M., 99-1458 (La.App. 1 Cir. 9/24/99), 754 So.2d 1028. An appellate court may not reverse a juvenile court’s findings of fact unless they are clearly wrong. State ex rel. S.M.W., 2000-3277 (La.2/21/01), 781 So.2d 1223.
We disagree with E.C.’s contention that the trial court erred in finding that she had not substantially complied with the case plan. The testimony at trial indicates there was no substantial compliance with the case plan by E.C. and that there is no reasonable expectation that E.C.’s conduct or condition will improve in the near future.
The case plan developed for E.C. mandated that she do the following:
(1) make herself available for the initial drug treatment assessment set up by the case manager;
(2) make herself available for any recommendations made by the drug treatment counselors, including attending in-patient treatment if recommended;
|7(3) complete the drug treatment program;
(4) make herself available for random drug screens;
(5) to attend parenting classes once drug treatment is completed;
(6) visit according to the visitation contract;
(7) notify the case manager of any address changes;
(8) pay child support for the care of the children;
(9) maintain “her housing”.
At trial, E.C. testified that the children were removed in August 1999 because she had left them with “a few people.” She testified that for three months in the summer of 1999 she used drugs, with her drug of choice being cocaine. E.C. testified that she was given a case plan that she had to follow to have the children returned. She testified that this case plan included “to complete drug treatment, parenting, to get a job, and find a place to live.” In compliance with the drug treatment, E.C. testified that she attended Jefferson Parish Substance Abuse clinic for about three weeks. She was then told she had to leave the program because of excessive absences. She was told she could re-enter, but she failed to do so. E.C. acknowledged that she was told by her case manager and the court “a bunch of times” that she needed to complete a drug rehabilitation program. She explained that at a court appearance on July 11, 2000, she was ordered by the court to seek treatment from Bridge House or another substance abuse program. E.C. testified that she went to Bridge House the next day, but she was not accepted. She further testified that she attended an inpatient drug treatment program at River Oaks, a private psychiatric hospital, for one week. However, no evidence was introduced to support this contention.
E.C. did present evidence that she completed a parenting program at the Y.M.C.A. She also presented evidence that she attended five of the eight scheduled visits with the children. E.C. testified that she looks for a job every other week and had contacted Project Adams for assistance with finding a job. She explained that she | sdid not pay support because she does not have a job. She explained that she obtained money from her mother and her boyfriend. E.C. testified that she continued to “go out” to bars three nights a week. She spent the night at her boyfriend’s house three nights a week. E.C. acknowledged that at the time of trial she was unable to provide a home for the children.
*921 Eugenia Patru, an expert in clinical and forensic social work, testified on behalf of the defendant. Ms. Patru testified that E.C. has post traumatic stress disorder as a result of a previous violent relationship. As a result she “spaces out” and becomes dissociated. Ms. Patru explained that this makes her emotionally unavailable for the children and could cause her to leave the children alone at home or some place else. E.C. has inappropriate sexual behavior in that she has sexual relationships with people “who she knows are bad for her.” Ms. Patru testified that E.C. is angry and has trouble controlling her temper. She further testified that E.C. has never mastered reading and writing, although she is skilled in basic math. She explained that E.C. is unable to cope with the ordinary demands of life such as providing and maintaining a home. Her judgment is impaired.
Ms. Patru opined that E.C. could be helped and that she needed help with all aspects of daily life such as housekeeping, daycare for the children, and a reading tutor. Ms. Patru was unable to estimate how long E.C. would need treatment to address these problems. She could not estimate the probability of the likelihood of E.C.’s rehabilitation with any degree of medical certainty. Ms. Patru did state that it was not recommended that E.C. assume care of the children at the time of trial.
Dr. Charles Zeanah, an expert in the field of psychiatry, was called to testify by the defendant. Dr. Zeanah examined and treated E.C. in 1996 when the children were removed the first time. Dr. Zeanah testified that if someone has a three month | ahistory of cocaine abuse, there are lifestyle issues that need to be addressed. He opined that three weeks treatment at Jefferson Parish substance abuse clinic and one week at River Oaks hospital would not be considered adequate treatment given this history. Dr. Zeanah further testified that negative random drug screens do not rule out the possibility of ongoing substance abuse. He explained that it is not possible to provide meaningful intervention for other problems until the substance abuse problem is addressed. He explained that the fact that E.C. received one and a half years of treatment when the children were initially placed in the State’s custody was not a “good prognostic sign.” He estimated that E.C. would require “much longer” than one year of treatment to address these problems, given that she had already been treated for one and a half years. Dr. Zeanah further testified that characteristics of parents who are likely to have their rights terminated include a history of substance abuse, a history of psychiatric difficulties and childhood maltreatment. He noted that E.C. has two of these characteristics, the history of substance abuse and psychiatric difficulties.
Based on this testimony, the trial court found by clear and convincing evidence that E.C. did not comply with the ease plan and that termination of E.C.’s parental rights was in the best interest of the children. We agree. E.C. had sixteen months between the time the children were removed and the time of trial to complete a drug program, find a job, and locate housing. She did none of these.
For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.

. M.B.'s parental rights were also terminated in the juvenile proceeding, however, he has not appealed that judgment.