805 So.2d 1205 (2002)
STATE of Louisiana, In the Interest of R.C., R.C. and D.E., Plaintiff-Appellee,
v.
Billy R. EVERETT, Defendant-Appellant.
No. 35,749-JAC.
Court of Appeal of Louisiana, Second Circuit.
January 23, 2002.
Bodenheimer, Jones & Szwak by Mary E. Winchell, Shreveport, Counsel for Appellant.
Audie L. Jones, Shreveport, Counsel for Appellee.
Allen Haynes, Shreveport, Counsel for the Children.
Michelle Dufour Brown, Counsel for the Mother.
Before NORRIS, PEATROSS and KOSTELKA, JJ.
*1206 KOSTELKA, J.
Billy R. Everett appeals the judgment of the Juvenile Court for Caddo Parish, Louisiana in favor of the Department of Social Services, Office of Community Services ("the State"), terminating his parental rights. For the following reasons, we affirm.

FACTS
The three minor children of Billy R. Everett ("Everett") and Ginger Clarke ("Clarke")[1] have been in the care of the State since October 10, 1997, when an Instanter Order was issued removing the children from Clarke's care due to neglect.[2] Everett was at that time and is currently in prison serving a lengthy sentence for the attempted murder of Clarke. The children have previously been adjudicated in need of care and their custody was awarded to the State.
This is the fourth time that the interests of Everett and his three minor children have been before this court. In Everett I, Everett appealed the decision of the juvenile court's approval of the State's plan to transfer guardianship of the three children to their respective foster parents. The initial case plan was for reunification with Clarke, but the plan was changed due to her noncompliance. Everett initially submitted three relatives for the State to contact regarding possible care of the children, but none of those relatives responded. The father then recommended a former childhood friend, Marsha Crnkovic ("Crnkovic")[3], as a possible guardian for the children, and she agreed to take the children into her home. Although the State was at first positive about that proposal, the foster families later indicated their desire to adopt the three children; thus, the State changed its recommendation to make the permanent goal transfer of guardianship to the foster families. The juvenile court found that the State's plan of working toward guardianship of the children with their respective foster parents was in the best interest of the children. This court affirmed the juvenile court's decision approving the plan of guardianship but remanded with instructions that the State submit a detailed schedule setting forth the reasonable contact that Everett was to have with his children.
In the second case before this court, State of Louisiana in the Interest of R.C., R.C. and D.E. v. Everett, 33,809 (La. App.2d Cir.08/23/00), 775 So.2d 706 (unpublished opinion), Everett appealed a judgment of the juvenile court continuing the guardianship of his three minor children with their foster parents. This court affirmed that judgment.
In the third case before this court, State ex rel. R.C. v. Everett, 34,986 (La.App.2d Cir.05/09/01), 787 So.2d 530 ("Everett III"), the State had filed a petition to terminate Everett's parental rights. At the termination hearing, and after the conclusion of the State's case, the juvenile court granted Everett's motion for involuntary dismissal, holding that his proposed plan to place the children with Crnkovic (who was now married to Everett) was reasonable. Judgment, therefore, was rendered at that time in Everett's favor *1207 dismissing the State's petition to terminate his parental rights. This court determined that the juvenile court erred in granting the father's motion for involuntary dismissal, reversed and remanded the case for completion of the trial, which brings us to the appeal at hand.
The case sub judice arises following the remand and completion of the trial in August, 2001. In its ruling, the juvenile court recognized that this court had found the plan offered by Everett unreasonable and that the evidence presented by him on remand did not address the total lack of any preexisting relationship between Crnkovic and the minor children, nor did the father attempt to present evidence regarding some other alternative plan. Accordingly, the juvenile court found in favor of the State and terminated Everett's parental rights as to R.C., R.C., and D.E. This appeal by Everett ensued.

DISCUSSION
The primary issue raised by Everett on appeal is whether the juvenile court erred in determining that he failed to provide a reasonable plan for the appropriate care of his children as required by La. Ch.C. art. 1015(6).
The state's parens patriae power allows intervention in the parent-child relationship only under serious circumstances, such as here where the state seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequately for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. State ex rel. S.M.W., XXXX-XXXX (La.02/21/01), 781 So.2d 1223. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. As such, the primary concern of the courts and the state is to secure the best interest for the child, including the termination of parental rights if justifiable grounds exist and are proven. Nonetheless, courts must proceed with care and caution as the permanent termination of the legal relationship existing between natural parents and their child is one of the most drastic actions the state can take against its citizens. Id.
Title X of the Children's Code governs the involuntary termination of parental rights. As applicable to this case, the grounds for termination of parental rights are found in La. Ch.C. art. 1015(6) which provides:
The child is in the custody of the department pursuant to a court order or placement by the parent; the parent has been convicted and sentenced to a period of incarceration of such duration that the parent will not be able to care for the child for an extended period of time, considering the child's age and his need for a safe, stable, and permanent home; and despite notice by the department, the parent has refused or failed to provide a reasonable plan for the appropriate care of the child other than foster care.
The state is required to prove the elements of one of the enumerated grounds set forth in La. Ch.C. art. 1015 by clear and convincing evidence to sever the parental bond. La. Ch.C. art. 1035(A); State ex rel. S.M.W., supra; State in Interest of D.T. v. K.T., 29,796 (La.App.2d Cir.06/18/97), 697 So.2d 665. An appellate *1208 court cannot set aside a juvenile court's findings of fact in the absence of manifest abuse of discretion or unless those findings are clearly wrong. Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the trial court. In its manifest error review, it is important that the appellate court not substitute its opinion when it is the juvenile court which is in the unique position to see and hear the witnesses as they testify. State ex rel. S.M.W., supra.
Here, the basis for the State's petition is that Everett, who was convicted and incarcerated for the attempted murder of his ex-wife, Clarke, "failed or refused to effect a reasonable alternative placement of the children, other than foster care." On remand from this court as a result of Everett III, the termination hearing at the juvenile court resumed with Everett's case. After hearing all of the evidence and arguments by Everett and the State, the juvenile court took the matter under advisement.
Subsequently, the juvenile court issued its Ruling in the matter setting forth its reasons for judgment and determined that Everett had failed to present evidence indicating that his plan to place the children with Crnkovic was reasonable. The juvenile court noted that Crnkovic had testified as to her qualifications, characteristics and background, which were substantially uncontested by the State. However, the juvenile court further noted that no evidence presented by Everett addressed the lack of any preexisting relationship between the children and Crnkovic, a concern which had previously been addressed by this court.
Additionally, the juvenile court opined that the passage of time between Everett's initial suggestion of placement with Crnkovic and the termination hearing resulted in making what may have otherwise been a reasonable plan earlier in time now an unreasonable plan. This finding directly relates to the issue raised by Everett on appeal wherein he argues that the juvenile court erred in evaluating the reasonableness of the plan at the time of the termination hearing and not when it was initially presented to the State.
Certainly, Everett's plan was assessed for reasonableness at the termination hearing, but it has also been addressed previously by both the juvenile court and this court. At the termination hearing, the supervisor assigned to the matter, Michael Ersoff ("Ersoff") (who has twenty-one years' experience with the State), stated that whereas the State initially looked favorably upon Crnkovic following a home study in 1998, shortly thereafter, the State determined that such a placement would not be in the best interest of the children considering the lack of a relationship between the children and Crnkovic and the relationships which had formed between the children and their foster parents. Ersoff further testified that the significant change in Crnkovic's personal situation (i.e., by the time of the termination hearing she had married Everett, a convicted felon found guilty of violent acts against the children's mother) would certainly have altered the State's initial opinion of her as a reasonable candidate for placement of the children. The juvenile court's reliance on the recommendation of the State on this issue was not in error. See, State ex rel. R.L.P. v. Phillips, 98-1505 (La.App. 3d Cir.03/03/99), 737 So.2d 106. Moreover, Everett's argument is without merit, because the evidence shows that the juvenile court had continued to address the reasonableness of Everett's plan.
*1209 Finally, the juvenile court emphasized that the overriding objective of an in-need-of-care proceeding is to consider the best interests of the children, and the court observed that Everett had committed "horrific" crimes against the children's mother, which were remembered by the two older children. Logically, in order for a plan regarding the care of children to be considered reasonable, it must meet the baseline requirement of being in their best interest. In Everett I, the juvenile court determined that the best interest of the children would be served by keeping them in the care of the foster parents. At that point in time, it was the recommendation of the State that the children's best interest would not be served if placement was made with Crnkovic. This recommendation was supported by the opinions of the children's therapist and the court-appointed special advocate volunteer, as well as the desires of the children. The juvenile court reached the conclusion that placement of the children with Crnkovic was not in the children's best interest; thus, at that point in time the plan was not reasonable. It follows, considering the complete body of evidence before the juvenile court at the termination hearing, that Everett's proposed plan of placement of the children with Crnkovic is still not reasonable. Everett presented no evidence to the contrary. Consequently, the juvenile court's ultimate determination terminating Everett's parental rights pursuant to Ch. C. art. 1015(6) was not in error.

CONCLUSION
For the foregoing reasons, the judgment of the juvenile court is affirmed.
AFFIRMED.
NOTES
[1] The record indicates that the termination hearing only addressed the termination of Everett's parental rights and that Clarke was not a party to that specific proceeding. As well, she is not a party in this appeal.
[2] The factual basis for the State's case against the parents is set forth in State ex rel. R.C. v. Clarke, 33,023 (La.App.2d Cir.10/27/99), 743 So.2d 843, 845-846 ("Everett I").
[3] Crnkovic's name also appears in the record as "Crnkovich."