810 So.2d 1166 (2002)
STATE of Louisiana in the Interest of A.R.H. and A.A.H., Plaintiff-Appellant,
v.
Jacqueline Ann HINES, Defendant-Appellee.
No. 35,800-JAC.
Court of Appeal of Louisiana, Second Circuit.
February 27, 2002.
*1167 Elizabeth Clement Brown, West Monroe, for appellant.
Elizabeth G. Pierre, for appellees, A.R.H. and A.A.H.
Susan E. Skidmore, Monroe, for State of Louisiana, Dept. of Social Services, Office of Community Services.
Bobby R. Manning, for Allen Lee Price and Lee Smith.
Before NORRIS, GASKINS, and CARAWAY, JJ.
CARAWAY, Judge.
In this termination of parental rights proceeding, the trial court determined that the children's mother had not complied with the case plan for reunification with her children and that there was no reasonable expectation of significant improvement. The mother appeals this ruling which resulted in the termination of her parental right. Finding no manifest error in the trial court's ruling, we affirm.

Facts
On October 7, 1999, the Department of Social Services, Office of Community Services ("OCS") received a report of "lack of supervision, inadequate shelter and dependency" concerning T.H. (age 13), A.R.H. (age 12) and A.A.H. (age 11). The three children had been in the legal custody of their grandmother, Violnet Hines ("Violnet"), since at least 1996, maybe as early as 1993, after being removed from the custody of their mother, Jacqueline or Jackie Hines ("Jackie"). The social worker who investigated the report alleged that Violnet was legally blind and unable to adequately supervise and care for them. The investigator noted that the children were sleeping on the floor and that the house was in a deplorable and unsanitary condition. The children told the investigator that nonrelatives staying in the house were victimizing and abusing them, which the investigator attributed to the grandmother's neglect. Pursuant to an instanter order of custody, the children were removed from the home and placed in relative foster care, where they have remained since October 8, 1999. Their grandfather, Green Sellers, and his wife, Barbara, are board certified foster parents. The younger two children, A.R.H. and A.A.H., have lived with the Sellers continuously. The placement for the older girl, T.H., was changed to non-relative foster care in September, 2000, after the Sellers requested she be moved due to behavioral problems.
When the children were placed in foster care in 1999, Jackie's whereabouts were unknown. However, she attended the first family team conference on November 5, 1999, along with her mother, Violnet, the Sellers, OCS staff members and the three children. Initially, the case plan goal was reunification. Violnet "wanted the children back in the home," and Jackie wanted "to work with the Agency towards regaining custody." The children were adjudicated as children in need of care on January 21, 2000. The second family team conference indicated that the children were doing well in foster care, visiting their grandmother and mother in Violnet's home twice a month, and that ultimately, they would be reunited with Jackie.
However, circumstances soon changed. Jackie "disappeared" in June, 2000; she was allegedly incarcerated in the West Monroe City Jail between July and September. Violnet died on July 18, 2001, her house was boarded up and Jackie was left homeless. OCS terminated Jackie's parenting *1168 classes with Family Matters because she failed to attend the scheduled classes. Although the evidence indicated that Jackie had made some progress, after June, 2000 she stopped working with the agency and was no longer complying with the objectives of the case plan.
The permanency planning hearing held on October 24, 2000, found that the children had been in OCS custody since October 8, 1999, the permanent plan goal for T.H. was long term foster care, and the permanent plan goal for A.R.H. and A.A.H. was adoption. Thereafter, OCS filed a petition to terminate Jackie's parental rights to A.R.H. and A.A.H. on October 31, 2000[1].
In 1999, Jackie pled guilty to issuing worthless checks in violation of La. R.S. 14:71, was sentenced to three years, but placed on probation. On January 29, 2001, Jackie's probation was revoked and the original three year sentence imposed. She is presently incarcerated in St. Gabriel, Louisiana.
The termination trial was conducted on March 14 and April 17, 2001. Jacquelyn Jones and Andrea Savage, both social workers employed by Family Matters, testified about services they offered to Jackie, such as parenting skills and effective parenting, and her sporadic attendance. Dr. Bobby Stephenson, an expert in the field of psychology, testified about Jackie's psychological evaluation during February, 2000. Dr. Stephenson characterized Jackie's major weakness as a "deficit in common sense judgment," and noted that, according to standardized tests, her overall IQ was 61. This score indicated that she functioned in the mildly mentally handicapped range, and was significantly below average. Paula Leonard, the OCS case manager testified concerning T.H.'s case plan goal and its evolution from reunification to adoption.
By judgment dated July 30, 2001, the trial court terminated Jackie's parental rights to A.R.H. and A.A.H. The judgment specifically found that the OCS had satisfied the requirements of La. Ch.C. art. 1015(5) by clear and convincing evidence and that it was in the best interests of the two children that they be freed for adoption. It is from this judgment that Jackie appeals.

Discussion
The purpose of Title X of the Louisiana Children's CodeJudicial Certification of Children for Adoptionis to protect children whose parents are unwilling or unable to provide safety and care adequate to meet their physical, emotional, and mental health needs, by providing a judicial process for the termination of all parental rights and responsibilities and for the certification of the child for adoption. La. Ch.C. art. 1001. In termination proceedings, courts must carefully balance the two private interests of the child and the parents. While the parents have a natural, fundamental liberty interest in the continuing companionship, care, custody and management of their children, the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, longterm, and continuous relationships found in a home with proper parental care. State in the Interest of G.J.L., XXXX-XXXX (La.6/29/01), 791 So.2d 80. In balancing these interests, the courts of this state *1169 have consistently found the interest of the child to be paramount over that of the parent. Id. In all proceedings, the primary concern is to secure the best interest of the child if a ground justifying termination of parental rights is proved. Id. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. State ex rel. R.C. v. Everett, 35,749 (La.App. 2 Cir. 1/23/02), 2002 WL 80953.
The statutory grounds for involuntary termination of parental rights are set forth in La. Ch.C. art. 1015, which provides in pertinent part as follows:
The grounds for termination of parental rights are:
* * *
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

* * *
The State is required to prove the statutory ground on which it relies by clear and convincing evidence. La. Ch.C. art. 1035(1); State ex rel. SNW v. Mitchell, 2001-2128 (La.11/28/01), 800 So.2d 809. Only one ground need be established; however, the trial court must also find that termination is in the child's best interest. Id.
La. Ch.C. art. 1015(5) sets forth a three pronged requirement for termination. Id. The first prong requires the lapse of one year. The substantive elements of the second prong may be established in accordance with La. Ch.C. art. 1036(C), as follows:
C. Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
(1) The parent's failure to attend court-approved scheduled visitations with the child;
(2) The parent's failure to communicate with the child;
(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.
(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.
(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.
(7) The persistence of conditions that led to removal or similar potentially harmful conditions.
Likewise, the substantive elements of the third prong may be established under La. Ch.C. art. 1036(D), as follows:
D. Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidence by one or more of the following:

*1170 (1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.
(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.

(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.
Paragraph D continues the requirement of prior law that reformation or at least significant progress toward the parent's assumption of responsibility for the child is unlikely in the near future. See Comment 1997 (c), (d), La. Ch.C. art. 1036.
The issue of parental compliance with a case plan, the parent's expected success of rehabilitation, and the expectation of significant improvement in the parent's condition and conduct are questions of fact in a proceeding for termination of parental rights. State in the Interest of M.C., 01-668 (La.App. 5 Cir. 1/15/02), 2002 WL 54089. An appellate court cannot set aside a trial court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. State in the Interest of G.J.L., supra (citing Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978)). A trial court's factual determinations, including whether a parent is unfit and whether there is a reasonable expectation of reformation, will not be set aside in the absence of manifest error. State ex rel. F.H. v. House, 35,451 (La.App. 2 Cir. 10/2/01), 801 So.2d 1123.
In a thorough and well-reasoned opinion, the trial court summarized its ruling as follows:
[T]here was a great deal of work to be done by Jackie Hines to gain substantial compliance with the case plan. Hines tended to gain ground on some requirements, and then fall back into noncompliance. For example, she would locate adequate housing, only to be uprooted due to incarceration. She would meet with her case manager consistently then disappear without a trace.
The trial court also found that although Jackie attended most of her sessions with Family Matters, "she appeared to be incapable of serious and constructive participation."
Jackie makes two arguments concerning the trial court's ruling. She asserts that the testimony of Dr. Stephenson should have been disallowed or given no consideration since he had never consulted with the children and since his interview with Jackie on February 15, 2000 had not been updated for over a year prior to his testimony in April, 2001. Further, she argues that Dr. Stephenson's report from his February 15, 2000 interview did not recommend termination.
From our review of Dr. Stephenson's testimony, we do not find that OCS's case for non-compliance with the case plan rests primarily on his testimony. He informed the court of Jackie's limitations as a parent and of her difficulty controlling her behavior. The fact that Dr. Stephenson did not update the report by a subsequent interview with Jackie prior to the April, 2001 hearing can be explained in part by Jackie's incarceration after June, 2001. Jackie's arguments concerning the weaknesses of his testimony do not justify reversal.
*1171 Second, Jackie argues that she was in compliance with the case plan for many months between late 1999 and the April, 2001 hearing, and that OCS recognized such compliance in the proceedings. She claims that on January 10, 2001, OCS permitted the scheduled termination hearing to be continued since Jackie was attempting to comply.
Despite making this argument, Jackie admits that her record for the ten-month period prior to the hearing showed that she was not in compliance for approximately eight of those months because of her incarceration or other reasons. The short two-month period after November 6, 2000 and before the January 10, 2001 continuance, during which time she allegedly attempted to again comply with the case plan, cannot serve in isolation as grounds for error in this case. OCS did not dismiss its case for termination by conceding to the January 10 continuance. By the time of the April, 2001 hearing, when Jackie was back in prison, the trial court could look at the entire history of Jackie's efforts to comply with the case plan and reasonably conclude that there had been no substantial compliance and, that given Jackie's jail sentence, there was no reasonable expectation of significant improvement in the future.

Conclusion
The ruling of the trial court terminating the parental rights of Jackie Hines is affirmed. Costs of appeal are assessed to appellant.
AFFIRMED.
NOTES
[1] The action also involved Allen Price. At trial, he acknowledged A.A.H.'s paternity and testified that he paid $78/month child support by income assignment order; nevertheless, the trial court denied his request for a dismissal and terminated his parental rights on the ground that he had no contact with A.A.H. for more than six consecutive months. Allen Price did not appeal the trial court's ruling.