| ¡¡.CARTER, C.J.
This is an appeal by a mother, E.M., from a judgment terminating her parental rights and certifying two of her minor children, E.E.M. and J.D.M., as eligible for adoption. The parental rights of E.D., the father, were also terminated as to E.E.M.; however, his appeal has been dismissed on his own motion.
FACTS
E.E.M. was born on May 6, 1997, and initially placed in the legal custody of the Department of Social Services by court order dated July 7, 1997. The court order was brought about by an incident witnessed by Sergeant Roger Corcoran of the East Baton Rouge Sheriffs Office, wherein E.E.M.’s parents left her in an abandoned building on Airline Highway while they engaged in a fight. After Sergeant Cor-coran separated E.M. and E.D., “... he found roaches, beer bottles, whiskey bottles, and hypodermic needles in the abandoned building where the child had been lying.” E.E.M. had been alone in the building for approximately fifteen minutes. Sergeant Corcoran testified that E.M. and E.D. were both intoxicated at the time.
Mary Manchester, an Office of Community Services (OCS) case worker called to the scene, indicated that at that time, E.M.’s mother, A.M., advised her that she could not care for the child nor could E.M. and E.D. due to their dependency on drugs and alcohol. No other family members could be reached with whom E.E.M. could be placed. Thus, the state sought and obtained custody of E.E.M. based on E.M.’s neglect through a court order dated July 7,1997.
J.D.M., a son of E.M., was born on February 28,1998. OCS received a report that E.M. sent the four-month-old baby with an unidentified man to her sister’s house. Her sister, S.H., informed the man that she could not keep the child because she had to leave for work. After the man left, S.H. discovered that the man had left *1030 the baby on the steps of her trailer. Manchester attempted to locate E.M. and E.D. with no success. All attempts to place J.D.M. with relatives were unsuccessful; thus, J.D.M. was placed in state custody because of abandonment by order dated July 6,1998.
OCS formulated case plans for E.M. concerning both children. The case plan for E.E.M!, dated October 15, 1997, required E.M. to attend substance abuse treatments |3with the Baton Rouge Substance Abuse Clinic and to submit to random drug tests. E.M. was also required to obtain stable housing and employment, keep the case manager informed of her whereabouts, and visit her children regularly. OCS family team conferences and review hearings were held every six months to review compliance with the case plans.
In addition to the two minor children who are the subjects of this proceeding, the mother, E.M., has five other children who have been in state custody since September 27, 1993, and who are now residing in foster or group homes. The children were removed because of neglect and E.M.’s alcohol and cocaine use. E.M.’s parental rights have been terminated as to one of those children, C.M., by judgment rendered on May 28, 1998, and signed on September 16,1998.
A petition for termination of parental rights as to E.E.M. and J.D.M. was filed by the state on October 2, 1998, noting that E.E.M. was adjudicated a child in need of care on May 20, 1998, and that the proceeding to adjudicate J.D.M. as a child in need of care was pending. The petition alleged that the rights of E.M. should be terminated under LSA-Ch.C. art. 1015(3) (j) because she failed to comply with her case plan. Further, because her parental rights to one of the children’s siblings had been terminated, and prior attempts to rehabilitate her have been unsuccessful, the state urged E.M.’s parental rights with respect to J.D.M. should also be terminated. J.D.M. was adjudicated a child in need of care on November 2, 1998.
After a hearing on the termination issue, the juvenile court found that the state met its burden of proof and signed a judgment terminating the parental rights of E.M. and E.D. on March 19, 1999. E.M. appeals.
DISCUSSION
The state’s petition for termination was based on the following grounds enumerated in LSA-Ch.C. art. 1015 regarding involuntary termination, which provide in pertinent part:
The grounds for terminating parental rights are:
‡ ‡ ‡ ‡ ‡
(3) Misconduct of the parent toward this child or any other child in his household which constitutes extreme abuse, cruel and inhuman | treatment, or grossly negligent behavior below a reasonable standard of human decency, including but not limited to any of the following:
í|c ífc sj; ¿fc %
(j) The parent’s parental rights to one or more of the child’s siblings have been terminated due to neglect or abuse and prior attempts to rehabilitate the parent have been unsuccessful.
In support of the first prong of the test under LSA-Ch.C. art. 1015(3)(j), the state offered the pleadings and the judgment terminating E.M.’s rights to C.M., a sibling of E.E.M. and J.D.M., dated September 16, 1998. E.M.’s parental rights in relation to C.M. had been terminated due to neglect.
In support of the second prong, which addresses attempts to rehabilitate the parent, the state offered the testimony of Barbara Daigre, the OCS case manager assigned to E.M.’s case since 1993. Daigre testified that E.M. had not complied with any of the case plans and had not changed her patterns of behavior in any manner. Daigre explained the OCS *1031 services offered to E.M. included referrals to the Baton Rouge Substance Abuse Clinic, Louisiana Rehabilitation Services, parenting classes, and a referral to Dr. Ivory L. Toldson, a psychologist with the Center for Psychological Health Care, for individual counseling. OCS provided transportation to these services by either car or bus tokens and offered assistance in attempting to locate housing for E.M.
The first manner in which E.M. did not comply with the case plan was her failure to regularly visit her children during the visitations that were scheduled twice a month. Although E.M. did attend some parenting classes, she only attended twelve of the forty-two scheduled visits with E.E.M., and only four of the sixteen scheduled visits with J.D.M. When E.M. failed to appear for the visits, she did not provide OCS with any reasons for her lack of attendance.
Daigre testified that E.M. did not attend any substance abuse treatment as required by the plan. Moreover, E.M. tested positive for cocaine three times during random drug testing. In February 1999, shortly before the termination hearing began, E.M. refused a drug screen and acknowledged her continued use of cocaine and alcohol. There was no evidence that E.M. ever sought any of the help offered for her [ ^dependency problems or that she attempted to stop using drugs or alcohol as required by the plans.
E.M. did not satisfy the plan requirement of obtaining any employment. According to Daigre, the Louisiana Rehabilitation Services terminated working with E.M. on her vocational skills because of her lack of cooperation. Daigre testified that E.M. did hold a job for two days in 1997, but she quit and has not held a job since, nor has she ever provided any financial support to her children since they have been in state custody.
Daigre testified that E.M. did not obtain any type of permanent housing as required by the plan. At the time of her termination hearing, E.M. resided with her sister who wanted her to move out in a month. In addition to not complying with requirements of substance abuse treatment, employment, housing and visitation, E.M. missed many of the individual therapy sessions with Dr. Toldson.
Dr. Toldson, accepted by the trial court as an expert in the field of psychology, performed two evaluations on E.M. at the request of OCS. The most recent evaluation was dated January 11, 1999. In 1996, Dr. Toldson met with E.M. eight times for individual counseling; however, the sessions were supposed to be held on a weekly basis, and Dr. Toldson testified E.M. missed many of the appointments.
Dr. Toldson had initially diagnosed E.M. as suffering from polysubstance dependence with depression and mild mental retardation. However, Dr. Toldson noted E.M. functions in the borderline range and her test scores indicating mild mental retardation were more likely a result of her lack of education as opposed to an organic problem. According to Dr. Toldson, E.M. does possess the ability to understand and to make choices about her daily living.
In her 1999 evaluation, E.M. acknowledged that she continued to use cocaine and alcohol, she had no permanent home, and was not working. In his 1999 evaluation, Dr. Toldson stated that E.M. “gave no appearance of having the kind of stability that you would want to see ... in a person caring for young children.” Dr. Toldson recommended termination of parental rights based on E.M.’s drug and alcohol addictions.
| fiBased on the record, E.M.’s continued use of drugs and alcohol, her inability to complete any vocational training or to obtain a job, and her lack of permanent housing indicate she has not made any attempt to rehabilitate herself. It is clear that the refusal to attend substance abuse treatment and the failure to modify her behavior preclude a reasonable expectation of reformation required to prevent termination of parental rights. See State in *1032 Interest of T.D. v. Webb, 28,471 (La.App. 2nd Cir.5/8/96); 674 So.2d 1077; State in Interest of G.A., 94-2227 (La.App. 1st Cir.7/27/95); 664 So.2d 106; State in Interest of Q.P., 94-609 (La.App. 3rd Cir. 11/2/94); 649 So.2d 512.
We also note the record clearly supports an additional basis for involuntary termination under the grounds set forth in LSA-Ch.C. art. 1015(5), which provides:
Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his needs for a stable and permanent home.
The petition to terminate E.M.’s parental rights was filed on October 2, 1998. E.E.M. was removed from E.M.’s custody by court order dated July 7, 1997, and J.D.M. was removed from E.M.’s custody by court order dated July 6, 1998. A year had elapsed since E.E.M.’s removal, and we note the statute gives the trial court discretion to consider the termination of E.M.’s rights with respect to J.D.M. since his removal had been less than a year prior to the filing of the petition. As evidenced by the prior discussion, the record indicates E.M. had virtually no compliance with the case plans filed by OCS, and based on the testimony of Dr. Toldson regarding E.M.’s instability, there is no reasonable expectation of significant improvement in E.M.’s conduct in the near future. E.E.M. and J.D.M. are both children under the age of three and present an overwhelming need for a stable and permanent home.
Whether there has been adequate proof of E.M.’s substantial compliance with the casé plans, the success of her rehabilitation, and the expectation of significant improvements in her condition are all questions of fact. On review, factual findings of the trial court in determining whether requirements of a particular paragraph have been ^satisfied will not be set aside absent manifest error. State In Interest of D.S., 96-1820, p. 5 (La.App. 1st Cir.9/24/96); 694 So.2d 327, 331, writ denied, 96-2395 (La.12/6/96); 684 So.2d 930.
The trial court found it was in the best interest of E.E.M. and J .D.M. to permanently terminate any rights and relationship with E.M. After a thorough review of the record, we cannot say the trial court was dearly wrong in its determination that the allegations of the state’s petition setting forth the grounds for involuntary termination of parental rights enumerated in LSA-Ch.C. art. 1015(3)(j) and (5) were proven by clear and convincing evidence. Accordingly, the trial court properly terminated E.M.’s parental rights to E.E.M. and J.D.M.
CONCLUSION
For the above and foregoing reasons, the judgment of the trial court terminating the parental rights of E.M. in relation to E.E.M. and J.D.M. is affirmed. E.E.M. and J.D.M. are now eligible for adoption. E.M. is cast for all costs of this appeal.
AFFIRMED.