hGREMILLION, Judge.
In these consolidated cases, the State of Louisiana through the Department of Social Services, appeals the judgment of the trial court dismissing its petition to terminate the parental rights of Lisa Marie Lavergne Fernandez, as to her children, A.C.H. and A.I.H.[1] For the following reasons, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
A.C.H., born April 23, 2000, entered foster care in October 2000, after his mother and her boyfriend were arrested for attempting to rob a tobacco store. A.C.H. was present at the attempted robbery.[2] In December 2000, A.C.H. was adjudicated a child in need of care.
A.I.H., born March 19, 2001, entered foster care at birth because she had cocaine in her system and her mother was incarcerated shortly after delivery due to *793 an outstanding warrant for her arrest on charges of theft. Following a hearing in late April 2001, the trial court adjudicated A.I.H. a child in need of care and continued her custody with the state, with a follow-up hearing scheduled in September 2001. Fernandez was ordered to begin treatment for her mental illness and substance abuse problems, to attend and participate in parenting classes deemed appropriate by DSS, to refrain from criminal activity, to submit to random drug screens, and to attend Narcotics Anonymous and/or Alcoholics Anonymous meetings.
Following a September 2001 hearing, the trial court continued custody of both children in the State finding that inadequate progress had been made toward | ¡.alleviating or mitigating the causes necessitating the children’s continued placement in foster care. In a case plan dated October 2001, reunification with Fernandez was still DSS’s goal. A review hearing was scheduled for January 2002. In the interim between the September 2001 hearing and the January 2002 hearing, DSS reported to the trial court that Fernandez had been incarcerated for forty-two days at the Lafayette Parish Correctional Center, she had resumed residing with her boyfriend, who has an extensive mental health record and criminal history, and that she had not complied with her case plan.
Following the January 2002 hearing, the trial court continued custody in the State, again finding that Fernandez had made inadequate progress to alleviate the circumstances requiring the removal of her children from her custody. At this time, the permanent plan for A.I.H. changed to “adoption” rather than “reunification.”
In March 2002, DSS filed a petition for termination of parental rights and certification for adoption, urging that, pursuant to La.Ch.Code art. 1015(5), more than one year had elapsed since the minor children were removed, Fernandez had not substantially complied with her case plan, and there was no reasonable expectation of significant improvement in Fernandez’s condition or conduct in the near future.
In preparation for trial, DSS forwarded a report on May 13, 2002, to the trial court indicating that Fernandez had not complied with her case plan because she had failed to attend substance abuse treatment. As of April 2002, Fernandez began residing in a homeless shelter for women. DSS reported that she was not working, attending any inpatient treatment, and had missed several visitations with her children. However, Fernandez reported to DSS that she attended two NA/AA 1 ¡¡meetings per week, attended church, and that she had discontinued contact with her boyfriend, who had strongly influenced her to use drugs. DSS further reported a positive drug screen in February 2002, but a negative one in April 2002. DSS further stated that Fernandez failed to comply with that portion of her case plan requiring her to seek treatment for her mental illness. The report also states she has not sought out any help, nor has she taken her recommended medication. Further, Fernandez did not refrain from criminal activity and faced felony theft charges as of that date. Fernandez was also to attend parenting classes, which she had failed to do in the past. She was referred to classes again, and had attended two classes with four remaining. Fernandez’s scheduled visitations with her children were hit-or-miss and DSS reported that the children were uncomfortable around her and would often cry, causing her to end the sessions early. As many as six months have elapsed with no visit whatsoever. Finally, DSS reported that Fernandez is not in frequent contact with them, nor does she keep the agency apprized of her where *794 abouts. Further, she had not provided the agency with verification of her income and had not maintained a stable residence in order to demonstrate that she would be able to provide for her children’s basic needs.
Following the hearing, the trial court issued a written judgment denying and dismissing the petition to terminate Fernandez’s parental rights and continued the children’s custody in the State. DSS timely appealed to this court.
ISSUES
DSS assigns as error:
1. The trial court’s finding that there was a reasonable expectation of significant improvement in Fernandez’s | condition or conduct in the near future.
2. The trial court’s finding that termination of Fernandez’s rights was not in the best interest of the children.
LAW AND DISCUSSION
We have stated that “[p]arental rights to the care, custody, and management of children is a fundamental liberty interest warranting great deference and vigilant protection under the law.” In re J.K., 97-336, p. 4 (La.App. 3 Cir. 10/29/97), 702 So.2d 1154, 1156. See also Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Accordingly, a parent has a strong interest in the accuracy of a decision to terminate her rights. Lassiter v. Department of Social Servs. of Durham County, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Thus, the Louisiana legislature has imposed strict standards that require the State to prove, by clear and convincing evidence, the grounds for termination under La.Ch.Code art. 1015 before a judgment can be issued terminating parental rights. In re J.K., 702 So.2d 1154.
This analysis requires a balancing of the child’s interests and the parent’s interests; however, it has been repetitively held that the interests of the child are paramount over that of the parent. In re J.A., 99-2905 (La.1/12/2000), 752 So.2d 806. In that case, the supreme court stated:
The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. As such, the primary concern of the courts and the State remains to secure the best interest for the child, including termination of | .^parental rights if justifiable grounds exist and are proven. Nonetheless, courts must proceed with care and caution as the permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens.
Id. at 811 (citation omitted).
The trial court’s determination regarding the termination of parental rights will not be reversed by the appellate court unless it is manifestly erroneous or clearly wrong. In re V.F.R., 01-1041 (La.App. 3 Cir. 2/13/02), 815 So.2d 1035, writ denied, 02-0797 (La.4/12/02), 813 So.2d 412.
DSS argues that it proved by clear and convincing evidence that Fernandez failed *795 to comply with her case plan, which is a ground for termination pursuant to La.Ch. Code art. 1015(5). Article 1015(5) sets forth the following as grounds for involuntary termination:
Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parents custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
It also argues that, pursuant to La.Ch. Code art. 1036(C), it has proven lack of parental compliance with the case plan. La.Ch.Code art. 1036(C) states:
Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
(1) The parent’s failure to attend court-approved scheduled visitations with the child.
(2) The parent’s failure to communicate with the child.
U(3) The parent’s failure to keep the department apprised of the parent’s whereabouts and significant changes affecting the parent’s ability to comply with the case plan for services.
(4) The parents failure to contribute to the costs of the child’s foster care, if ordered to do so by the court when approving the case plan.
(5) The parent’s repeated failure to comply with the required program of treatment and rehabilitation services provided in the ease plan.
(6) The parent’s lack of substantial improvement in redressing the problems preventing reunification.
(7) The persistence of conditions that led to removal or similar potentially harmful conditions.
DSS also argues that it proved, by clear and convincing evidence, there was a lack of any reasonable expectation of significant improvement in Fernandez’s conduct as evidenced by several factors set forth in La.Ch.Code art. 1036(D), which states:
Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent’s conduct in the near future may be evidenced by one or more of the following:
(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.
(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.
(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.
^Jennifer Newman, a foster care supervisor at DSS, testified that Fernandez had failed to comply with her case plan in that she did not have a stable home and moved around from place-to-place; she did not keep in contact with DSS or apprize them *796 of her whereabouts; did not attend scheduled meetings and visits; did not attend parenting classes; did receive some inpatient rehabilitation for her mental illness, but was not cooperating with the staff; did not receive treatment for her substance abuse; and attended only twelve of twenty-seven scheduled visits with her children.
Jennifer Jamison, who took over AJ.H.’s case in November 2001, reiterated Newman’s testimony that Fernandez had not completed any of the steps in her case plan. She further testified that A.C.H. is doing very well in his current placement and that the foster parents would like to adopt him if he is released. She also stated that A.I.H. has been in the same foster home since birth and that the foster parents would adopt her if she were to be released. Jamison stated that, in the month prior to trial, Fernandez had made an effort to comply with some aspects of her case plan and that she had expressed a desire to complete her case plan. She also indicated to Jamison that she would like to have her children back in her custody. She further stated that DSS would assist her in working her case plan if the trial court gave her six more months to work toward completing it. However, she stated that she believed it was in the children’s best interest to stay with their foster parents as they had bonded to them and were doing very well.
Fernandez testified that she was currently pregnant. She stated that she did not have independent housing, but had worked as a barmaid part-time, although |sshe had not worked since January. She admitted that she hadn’t succeeded in following through with her case plan in the past, but that she believed she would be able to succeed in her new environment. She attributed many of her past problems to her former boyfriend and stated that, in her new drug-free environment, she is prepared to rebuild her life.
Edryie Berry, the supervisor at the shelter in which Fernandez is living, testified that Fernandez is involved in the many programs offered by the shelter and has individual sessions with her several times per week. Berry stated that she believed Fernandez had a sincere desire and willingness to change. She stated that she has voluntarily participated in all of the programs offered by the shelter.
Following this testimony, the trial court acknowledged Fernandez’s failure to comply with the case plan up until six weeks prior to trial. However, the trial court found:
Having heard the testimony of both the mother and witnesses, the Court is, however, impressed that this is in fact a significant effort to turn her life around. Whether or not she can do what is required by this Court and the federal government statutes and regulations within a reasonable period of time from this day forward, I don’t know. But certainly I think at this juncture the Court is hesitant to terminate her parental rights based on the effort that she has made.
Having said that, ma’am, and having concluded that I will not terminate your parental rights this time, we will have a review hearing in six months and you’re going to have to make some effort to show that you’re going to be able to sustain for your children housing, employment, those things. You haven’t had the employment since January. The sugar and spice club or whatever it’s called is not employment that’s going to satisfy me. I hope that what’s happening for you at Naomi House is something that’s going to be strong enough to get you past this hurdle. But in six months we’ll have a review hearing and *797 at a juncture past six months if termination is what has to happen again, we’re not going to have a full-blown hearing again. We’ll only have that which will be required from this juncture on. I have heard | [¡enough to terminate parental rights but for what I consider to be a significant change in the last six weeks. So I guess what I’m saying is if you can prove to me in the next six months — and I’m not saying that’s when things will happen to change, but during that six months you’ll have to convince me that I can be in a position to someday award you the custody back of your children.
Based on our review of the evidence, we cannot say that the trial court manifestly erred in denying the termination of Fernandez’s parental rights. There is no dispute that Fernandez failed to comply with her case plan in the past. However, the trial court found that her recent behavior indicated a reasonable expectation of improvement. Because the termination of parental rights is a severe action, not to be taken lightly, the trial court’s finding that Fernandez has made recent improvements and showed a willingness to change, is in keeping with the guidance in In re J.A, 752 So.2d at 811, that the “courts must proceed with care and caution” in parental termination cases. Moreover, the children remain in the stable care of their foster parents pending a review hearing to determine if Fernandez is progressing in her case plan. For these reasons, we feel the trial court did not manifestly err in finding that it was in A.C.H. and AJ.H.’s best interest that their mother’s rights to them not be terminated.
CONCLUSION
The judgment of the trial court dismissing DSS’s petition for the termination of the parental rights of Lisa Marie Lav-ergne Fernandez is affirmed. All costs of this appeal are assessed against the plaintiff-appellant, the State of Louisiana, through the Department of Social Services/Office of Community Services.
AFFIRMED.

. Parental rights of the fathers of these two children have been terminated and are not at issue.

. Initials are used throughout to protect the privacy of the juveniles.