# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-920

**STATE OF LOUISIANA**

**VERSUS**

**F.Y. & R.D.Y.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 2004 JU 69
HONORABLE J. BYRON HEBERT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Glenn B. Gremillion, Judges.

**AMY, J., CONCURS IN THE RESULT.**

**AFFIRMED.**

**Jan Frederick Rowe**
**124 North State Street - Suite 300**
**Abbeville, LA 70510**
**Telephone: (337) 898-1049**
**COUNSEL FOR:**
   **Defendants/Appellees - G.W.Y. and G.A.Y.**

**Debra Keigh Basile**
**825 Kaliste Saloom Road**
**Brandywine I - Room 218**
**Lafayette, LA 70508**
**Telephone: (337) 262-5955**
**COUNSEL FOR:**
   **Plaintiff/Appellant - State of Louisiana, Department of Social Services**

**Bart Allen Broussard**
**209 East St. Victor Street**
**Abbeville, LA 70510**
**Telephone: (337) 893-1705**
**COUNSEL FOR:**
      **Defendant/Appellee - F.Y. and R.D.Y.**

THIBODEAUX, Chief Judge.

Appellant, the State of Louisiana, through the Department of Social Services (the State), seeks reversal of a judgment which denied the State's petition for termination of parental rights and certification for adoption in regard to the minor children, F.M.Y. and R.D.Y. The trial court found that the State failed to establish by clear and convincing evidence sufficient grounds under La.Ch.Code art. 1015(3)(k), and (5) to terminate the parental rights of the biological parents, G.A.Y. and G.W.Y. For the following reasons, we affirm the judgment of the trial court.

## I.

## ISSUES

The following issues are presented in this appeal:

(1)     Did the State fail to prove by clear and convincing evidence that there is a lack of reasonable expectation of significant improvement in the parents' condition or conduct in the near future?

(2)     Did the State fail to prove by clear and convincing evidence that prior attempts to rehabilitate the parents have been unsuccessful?

## II.

## FACTUAL BACKGROUND

The minor children who are the subject of this action are two brothers, F.M.Y., age eleven, and R.D.Y., age nine. They were initially removed from their biological parents' home by the State on October 31, 1996, along with their older sister, P.A.Y., because of reports of abuse and neglect. At the time of the removal of the children from the home, R.D.Y. was one, F.M.Y. was three, and P.A.Y. was nine years old. All three children were placed with a foster family for a short period of

1

time before being placed under the legal custody of their maternal aunt on January 5, 1998.

The aunt abandoned custody of P.A.Y. to the State on October 14, 1998, alleging an inability to control the child. P.A.Y. was then placed in long term foster care. On December 1, 1998, the children's mother, G.A.Y., pled no contest to the charge of principal to indecent behavior with a juvenile, a charge that involved her daughter, P.A.Y., and which was a factor in the removal of the children from the home. It was alleged that she acquiesced in her minor daughter's involvement in child pornography and/or acquiesced in her being sexually abused by one or more men. In May of 1999, the location of G.W.Y., the children's father, was unknown, and G.A.Y. was sentenced to seven years of hard labor, with all but one year suspended. She was placed on five years of supervised probation. G.A.Y. was released later that year after serving six months of the sentence.

On August 16, 2000, while the boys remained under the legal custody of their aunt, G.A.Y.'s and G.W.Y.'s parental rights were terminated as to P.A.Y., who remained in foster care. The State petitioned for termination of their parental rights because of their failure to comply with the case plan for reunification that had been approved by the court.

G.A.Y.'s trouble with the law escalated again on March 6, 2001, when she was arrested for cocaine possession and failed a drug screen. As a result, her probation was revoked and she was sentenced to serve the remaining five years of her prior sentence. She pled guilty to the possession of cocaine charge and also received a five-year sentence for the cocaine possession, which ran concurrently with the other sentence. G.A.Y. was paroled on November 15, 2003 after serving half of the time sentenced. Her current parole term ends in April of 2007.

On March 30, 2004, the aunt abandoned the boys to the State, asserting her poor health and the youngest boy's (R.D.Y.) unruly behavior as the primary reasons that she could no longer care for them. On March 31, 2004, the trial court signed an Instanter Order, confirming the oral Instanter Order of March 30, 2004, which placed the children in State custody once again due to this abandonment by their legal custodian. The boys were placed together in a foster home, where they currently remain and, by all accounts, are doing well. The State submitted, and the court approved, on April 28, 2004, an original family case plan seeking the goal of reunification of both boys with their parents after the parents expressed the desire for reunification with the children. Prior to the case plan being approved, six years had passed with no contact between the children and their parents.

As a result of this history, the case plan required the parents to actively work toward multiple goals that were deemed necessary to create a safe and stable home environment prior to there being any reunification with the children. One of the first requirements was for the parents to work closely with their case worker. Specifically, they were asked to provide the case worker with necessary information to identify other relatives who could possibly contribute to the family support system. Also, they were to communicate regularly with the case manager in order to work along with him in the reunification process. This required their participation in the ongoing review of their compliance with the case plan and their participation in the planning of subsequent case plans.

The parents were required to fulfill their legal responsibilities to the children also, which included their attendance at all family team conferences, pre-family team conference/ASFA staffings, and court proceedings. They were also required to contribute towards the cost of foster care through monetary contributions on a monthly basis.

The case plan set forth the goal of building and maintaining the parent-child relationship and, thus, required both parents to attend two, one hour, supervised visits per month with their children. G.A.Y. and G.W.Y. were also required to increase their parenting skills and knowledge by attending parenting classes and were to demonstrate their learned skills in subsequent interactions with the children. Also relevant to this goal was the requirement that both parents undergo psychological evaluations and follow any resulting recommendations for treatment. The parents were also required to demonstrate their ability to maintain a stable residence by obtaining and remaining in a home with utilities connected at all times and with separate beds for each child. In addition, G.A.Y. and G.W.Y. were to maintain and provide verification of stable and legal incomes that would be adequate to pay housing costs and to provide for day-to-day living necessities.

The parents were both ordered to participate in an anger management and/or domestic abuse intervention program to address concerns over arguments between them. The case plan further required both parents to give authority to the State to perform regular criminal records checks, which would be used in assessments of their suitability as parents. They were each required to exhibit an ability to remain sober by participating in evaluation and treatment at a State recommended substance abuse clinic, submit to random drug screenings, and attend one Alcoholics Anonymous and one Narcotics Anonymous meeting each week.

Finally, the case plan also sought to have the parents accept responsibility for their children's removal and placement in foster care. This was to be evidenced by each parent engaging in discussions about their specific actions or omissions that caused the removal of the children, by acknowledging and taking responsibility for P.A.Y.'s abuse, and by appropriately discussing with the children

their actions that led to them being placed in foster care. G.A.Y. was also required to attend and pay for sexual perpetrator counseling.

The subsequent, court-approved case plan prepared by the State after the second family team conference of September 7, 2004, was identical to the first plan. On February 21, 2005, the next pre-family team conference staffing was held and the permanency plan goal was recommended to be changed from reunification of the boys with their parents to adoption, based on a finding that inadequate progress had been made towards alleviating or mitigating the circumstances that necessitated the childrens' placement in foster care. The next family team conference was held on March 1, 2005. Although the same goals that were set forth in the prior case plans remained in the March 2005 case plan, as achievement of those goals were deemed to be in the best interest of the children, the plan for permanent placement of the children was changed to that of adoption. The court approved the plan.

On February 16, 2005, a year after the institution of the case plan for reunification, the State determined that termination of G.A.Y.'s and G.W.Y.'s parental rights as to the two boys should be sought. Accordingly, the State filed a "Petition for Termination of Parental Rights and Certification for Adoption." The State asserted La.Ch.Code art. 1015(3)(k), and (5) as the grounds justifying termination of G.A.Y.'s and G.W.Y.'s parental rights.

The State asserted that La.Ch.Code art. 1015(3)(k) was an appropriate basis for termination since the parents' rights had been terminated as to one child already, P.A.Y., and because prior attempts to rehabilitate the parents, as evidenced by their non-compliance with the active case plan, had been unsuccessful.

Regarding La.Ch.Code art. 1015(5), the State submitted to the trial court that the following elements of that article were also satisfied by the facts of this case. Specifically, it was argued that at least one year had elapsed since the children had

5

been removed from the parents' custody pursuant to a court order, that despite earlier intervention there was no reasonable expectation of significant improvement in the parents' condition or conduct in the near future, and that the parents had not substantially complied with the case plan.

The parents' non-compliance with the case plan, according to the State, had been exhibited by the following:

Non-compliance of both parents:

1) joint failure to complete parenting classes as ordered (both have completed only 3 of 8 classes);

2) joint failure to submit to psychological evaluations;

3) joint failure of both to accept responsibility for the reasons for their children's removal and placement in foster care and their role that led to agency/court involvement;

4) joint failure to participate in substance abuse treatment at any recommended addictive disorders clinics;

5) joint failure to attend all family team conference meetings (G.A.Y. attended 1 of 4 meetings; G.W.Y. attended 0 of 4 meetings);

6) joint failure to attend all pre-family team conference staffings (a/k/a Adoption and Safe Family Act (ASFA) staffings) regarding progress towards the goal of achieving permanent placement of the juveniles with the parents (G.A.Y. attended 1 of 3 ASFA staffings; G.W.Y. attended 0 of 3 ASFA staffings); and

7) joint failure to regularly visit with their children to maintain a parent-child relationship (G.A.Y. has attended 18 of 28 bimonthly visits and G.W.Y. has attended 3 of 28 bimonthly visits).

G.W.Y.'s individual non-compliance:

1) G.W.Y.'s failure to maintain regular contact with and develop a relationship with the case worker;

6

2) G.W.Y.'s failure to attend anger management classes; and

3) G.W.Y.'s failure to maintain sobriety (this claim is based on G.W.Y.'s recent conviction in January 2005 of a 2002 cocaine possession charge, which has resulted in a 3-year suspended sentence, 3 years of supervised probation, and a $1000 fine).

Through court-appointed counsel, G.A.Y. and G.W.Y. entered denials to the allegations set forth in the termination petition. An adjudication hearing was set for April 11, 2005. On that day, the trial court received testimony from G.A.Y.'s probation and parole officer, Keith Bedwell (Bedwell), and held a closed hearing with the children at the request of their counsel so that they could be questioned regarding their wishes. In that meeting, the boys expressed love for both of their parents, although both admitted to not having spent a lot of time with either of them, and each separately testified that they would like to be able to live with their parents.

The parole officer, Bedwell, stated that G.A.Y. was doing "exceptionally well" on parole, and had abided by every condition of her parole. He confirmed, nevertheless, that she is a registered, convicted sex offender and as a result cannot have unsupervised contact with any children until the end of her parole term in 2007. She also must abide by a 10:00 p.m. to 6:00 a.m. curfew until the end of her parole term. By law, he added, her parole term cannot be shortened. The hearing was continued for all other purposes due to G.W.Y.'s absence[1] and was reconvened on May 13, 2005.

On May 13, 2005, the court received testimony from G.A.Y., G.W.Y., and Richmond Suire, the Office of Community Services social worker overseeing the family's case. Testimony and evidence presented revealed that G.A.Y. and G.W.Y. are married and have satisfactorily maintained a stable residence and stable income.

---

[1] G.W.Y. was offshore working and had not been able to arrange transportation to Louisiana for the hearing because of weather conditions.

G.W.Y. is an electrical technician and regularly works offshore in the Gulf of Mexico, which requires him to be away from home two weeks a month. In the last two years, his work has taken him to Mexico and Africa, requiring his absence from home for periods of a month or more at a time. He and G.A.Y. testified that this is why he has been unable to participate in all visitations with the children or to be more compliant with the requirements of the case plan.

The case worker countered this testimony, however, by testifying that even when G.W.Y. was not offshore working, he was not present for the impromptu meetings held at their home. In addition, he stated that although the visitation schedule had been recently altered in March 2005 to accommodate G.W.Y.'s work schedule so that he could attend visits with the children, G.W.Y. continued to miss visits. The case worker was of the general opinion that G.W.Y. was not making sufficient efforts to participate in the plan for reunification. G.W.Y., on the other hand, testified that he had not yet been able to attend the visits under the new schedule due to one-time, employment-related training classes in which he was required to participate. He provided proof of his attendance at these training classes to the court. In addition, he testified that when he is offshore working and cannot attend visits with the children, he regularly calls and talks with the boys during those visits. He also expressed the desire to the court to visit more with his children.

In regards to G.A.Y.'s post-conviction employment history, the record reflects that after being paroled she gained immediate, part-time employment at a restaurant before obtaining a job at the Erath police station, where she worked for eleven months. She has not returned to that job since injuring her foot in a work-related, car accident that resulted in her car being totaled. The foot injury, G.A.Y. testified, has required multiple surgeries. This, along with her lack of transportation, caused her to miss visits with the children. She testified that she called the case

worker in each instance prior to the visits to notify him of her inability to attend. She also claims to have provided doctors' excuses. The record is not clear as to whether all of her missed visits were related to her surgeries, subsequent recovery periods, and lack of transportation.

In further regard to the parents' compliance with the case plan, the case worker testified that the parents have regularly complied with the requirement that they pay child support. G.A.Y. pays $586.00 per month and G.W.Y. pays $726.00 per month. Both have also regularly paid $20.00 per month to the Office of Community Services towards the cost of foster care. It was undisputed that they also provide the boys with money and gifts during their visits. The case worker also testified that he believed the children were bonding well with the mother and that the visits were "real good" between them. The record is clear that the boys' interaction with the father has been much more limited.

Contrary to the assertions made by the State regarding G.A.Y.'s non-compliance with the case plan requirements for treatment and testing, G.A.Y. testified that she is in compliance. While in prison, G.A.Y. attended daily, two-hour substance abuse classes for the entire two-and-a-half years of her last incarceration. She testified that the certificate of her attendance at these classes and the substance abuse certification she received had been provided to her parole officer and the case worker, as proof of her participation, although the case worker denies having received them. She maintained at the hearing that she continues to remain sober and that she was enrolled in ongoing substance abuse and sexual abuse classes at a local facility. Regarding her acceptance of her problems and the role they have played in her children's removal from the home, she acknowledged that she is a recovering substance abuser. She denied, however, any knowledge of, and any consent to, any sexual abuse of her daughter, P.A.Y. Moreover, she acknowledged that she is a

recovering substance abuser and acknowledged the effects it has had on her family. In regards to her attendance at parenting and anger management classes, G.A.Y. claims to have attended some classes although she admitted that she had not completed them. She testified that at the time of the hearing she had made arrangements to re-enroll in the necessary classes.

Ultimately, the trial court denied the petition for termination of parental rights, reasoning that the State failed to prove by clear and convincing evidence that the grounds under La.Ch.Code art. 1015(3)(k) and 1015(5) had been met. The trial court stated that La.Ch.Code art. 1015(3)(k) had not been established because there lacked clear and convincing evidence establishing that prior attempts to rehabilitate the parents have been unsuccessful. In addition, the trial court stated that the State failed to establish La.Ch.Code art. 1015(5) as a ground for termination, because there was no clear and convincing evidence that there is no reasonable expectation of significant improvement in the parents' condition or conduct in the near future. Finally, the trial court found that the evidence that was presented did not support the conclusion that termination would be in the best interest of the children.

As a result, the trial court ordered reinstatement of Child in Need of Care proceedings, including all of the parties' continued participation in the case plan for reunification, and ordered that the custody of the children remain with the State, with custody to be reviewed at the next review hearing.

III.

**LAW AND DISCUSSION**

The manifest error standard of review applies to a trial court's findings regarding whether parental rights should be involuntarily terminated. *State in the Interest of K.G. and T.G.*, 02-2886, 02-2892 (La. 3/18/03), 841 So.2d 759. In

10

applying this standard, we may not set aside any factual findings of the trial court unless the findings are manifestly erroneous or, in other words, are clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

The determination of whether the involuntary termination of parental rights should occur requires the trial court to balance the parents' "natural, fundamental liberty interest in the continuing companionship, care, custody, and management of their children" with the often competing interest of the children to establish "secure, stable, long-term, and continuous relationships found in a home with proper parental care." *State of Louisiana, In the Interest of L.R.S.*, 38,812, p. 5 (La.App. 2 Cir. 6/23/04), 877 So.2d 1040, 1045. Parents are recognized as having a strong interest in the accuracy of a decision to terminate their rights. In recognition of this interest, the courts of this nation are required to give great deference to this interest by vigilantly protecting it under the law. *State of Louisiana, In the Interest of A.C.H.*, 02-1014, 02-1015 (La.App. 3 Cir. 2/12/03), 846 So.2d 791 (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388 (1982)); *Lassiter v. Dep't of Social Servs. of Durham County*, 452 U.S. 18, 101 S.Ct. 2153 (1981). Louisiana has, in turn, sought to ensure that great protections are afforded parents when faced with these circumstances by statutorily requiring that the State, when seeking the termination of these rights, prove by clear and convincing evidence the existence of grounds justifying the involuntary termination. *State ex rel. A.C.H.*, 846 So.2d 791; *see also*, La.Ch.Code art. 1035.

The courts must be ever mindful, however, that notwithstanding the parents' interests, the interests of the children in such proceedings are deemed superior to those of the parents. *State of Louisiana, In the Interest of L.B. v. G.B.B.*, 02-1715 (La. 12/4/02), 831 So.2d 918. In further explaining the considerations to be

11

given when faced with involuntary termination proceedings, the supreme court has aptly stated:

> The State's *parens patriae* power allows intervention in the parent-child relationship only under serious circumstances, such as where the State seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. LA. CHILD. CODE art. 1001. As such, the primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven. Nonetheless, courts must proceed with care and caution as the permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens. The potential loss to the parent is grievous, perhaps more so than the loss of personal freedom caused by incarceration. *State in the Interest of A.E.*, 448 So.2d [183, 185 (La.App. 4 Cir. 1984)].

*State of Louisiana, In the Interest of J.A.*, 99-2905, pp. 8-9 (La. 1/12/00), 752 So.2d 806, 811. Accordingly, a two-pronged inquiry is posed in parental termination proceedings: (1) has the State established by clear and convincing evidence at least one ground for termination under La.Ch.Code art. 1015, and if so, (2) is the termination in the best interest of the child? *State ex rel. L.B.*, 831 So.2d 918.

We will examine the two grounds for termination that were rejected by the trial court.

***Grounds for Termination of Parental Rights Under Louisiana***
***Children's Code Article 1015(3)(k)***

Louisiana Children's Code Article 1015(3)(k) provides that termination may be sought if:

> (k) The parent's parental rights to one or more of the child's siblings have been terminated due to neglect or abuse and prior attempts to rehabilitate the parent have been unsuccessful.

La.Ch.Code art. 1015(3)(k). Accordingly, in order for this ground to apply, the State must prove, with clear and convincing evidence, that (1) the parents' rights to a sibling of the two boys' have been terminated and that (2) prior attempts to rehabilitate the parents have been unsuccessful. In this case, the trial court correctly recognized that the State presented undisputed proof that G.A.Y.'s and G.W.Y.'s parental rights to P.A.Y., the boys' sister, were terminated on August 16, 2000, and this finding is not challenged. However, the State appeals the trial court's finding that it failed to adequately establish the second component of La.Ch.Code art. 1015(3)(k)—that prior attempts at rehabilitation of the parents have been unsuccessful.

The trial court explained its ruling as follows:

> This Court finds that the DEPARTMENT has failed to prove by clear and convincing evidence that G.W.Y. ['s] and G.A.Y.'s parental rights should be terminated under this article. It is undisputed that their parental rights were terminated as to their daughter, P.A.Y. It is undisputed that G.A.Y. pled no contest to Principal to Indecent Behavior with a Juvenile, a charge that involved her daughter P.A.Y. This offense occurred in 1996. Although this Court recognizes the gravity of the offense, and the relationship between the persons involved, the Court did consider the relative culpabilities in this case in reconsidering her sentence.[2]

---

[2]The trial judge presided over the criminal proceedings that led to the 1999 sentencing of G.A.Y. in regards to the sex offense.

This Court recognizes that rehabilitation can occur, and has occurred in this case. The family dynamics that were present in 1996 are not present today. F.M.Y. and R.D.Y. were babies in 1996. The offense involved G.A.Y., her daughter, and a perpetrator outside of the home. In light of these facts, and the fact that substance abuse is no longer at issue, this Court finds that the family dynamics have changed to such an extent that there is no longer an environment producing a high risk of danger.

Additionally, the DEPARTMENT has not proven that prior attempts to rehabilitate the parents have been unsuccessful. In fact, the evidence is to the contrary. G.A.Y. has put her life back together and is working toward reunification. See State of Louisiana[,] [I]n the Interest of E.E.M. and J.D.M., 754 So.2d 1028 (La.App. 1 Cir. 1999) for comparison. Although G.W.Y. has not made nearly the efforts that G.A.Y. has made and continues to make, the Court finds that it is not in the best interest of the children to terminate G.W.Y.'s parental rights in light of the significant improvement in the household.

(Footnotes omitted).

We likewise find that the evidence presented reveals changed patterns of behavior on the part of the parents, particularly, G.A.Y., as was noted by the trial court. We note the court found that the home circumstances that existed at the time of the children's removal from the home in 1996 no longer exist. Regarding the father, G.W.Y., the trial court took into consideration his absences but, apparently, also weighed this against the stability the job provides to the family. Although G.W.Y.'s job takes him away from home often and seems to be partly responsible for the level of his participation in the reunification process thus far, the job also allows the parents to provide monetarily for the children, which they have willingly and regularly done. In addition, the record reflects G.W.Y.'s and G.A.Y.'s desire to be more involved in the children's lives, echoing the children's wishes.

Accordingly, understanding that the trial court's determination is an incredibly, fact-intensive undertaking in such cases as this, and based upon our review of the record, we cannot say that the trial court manifestly erred in finding that

the State failed to present clear and convincing evidence that there has been no successful rehabilitation of the parents or their home environment thus far.

### *Grounds for Termination of Parental Rights Under Louisiana Children's Code Article 1015(5)*

Louisiana Children's Code Article 1015(5) states that parental rights may be terminated if the following conditions are met:

> (5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

This, then, is a three-pronged inquiry, requiring a showing of (1) a lapse of one year prior to termination; (2) lack of substantial compliance with the case plan; and, (3) lack of reasonable expectation of significant improvement in the near future. La.Ch.Code art. 1015(5).

In its brief, the State recounts its asserted proof that it claims establishes each prong of La.Ch.Code art. 1015(5), beginning with the first prong of the article—the one year passage of time since removal. That factor is not contested.

Finding that the first prong of La.Ch.Code art. 1015(5) was satisfactorily established, we turn now to the State's claim that the trial court erred in finding that the second and third prongs were not proven by clear and convincing evidence. Article 1036(C) and (D) govern proof of parental misconduct and state, respectively, that a lack of parental compliance with the family case plan and the lack of any reasonable expectation of significant improvement in the near future, may be evidenced in the following manner:

**Art. 1036.  Proof of parental misconduct**

. . . .

C.  Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:

(1) The parent's failure to attend court-approved scheduled visitations with the child.

(2) The parent's failure to communicate with the child.

(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.

(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.

(5)The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions.

D.  Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:

(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.

(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.

(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide

an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

The State concedes only that the parents have succeeded in paying child support, maintaining a stable residence, and that G.W.Y. has maintained stable employment. Otherwise, the State argues that it presented clear and convincing evidence of the parents' lack of compliance, which included their joint failure to attend all court-approved scheduled visitations with the children, court appearances, family case plan meetings, and pre-family conference staffings, the father's failure to regularly communicate with the case worker and the children, and the parents' failure to comply with the complete program of treatment and rehabilitation services. These rehabilitation services include psychological and substance abuse testing and treatment, completion of parenting and anger management classes, and acceptance and/or acknowledgment of the conditions that led to the children being placed in foster care.

Although the trial court recognized that, per La.Ch.Code art. 1036(C), there had not been substantial compliance with the case plan by either parent (although the trial court found G.W.Y.'s level of compliance more troublesome than G.A.Y.'s) the trial court reasoned that termination of parental rights hinged on the third prong, which is whether there is a reasonable expectation of significant improvement in the parents' condition or conduct in the near future. It found that based on the evidence of parental compliance with the case plan, in addition to its evaluation of the witnesses' testimony and credibility of the witnesses, the State failed to prove this element. *See* La.Ch.Code arts. 1015(5), 1036(D).

We find no manifest error in the trial court's judgment. As the trial court noted, the State failed to present any expert witness testimony nor did it prove any established patterns of behavior that would support the conclusion that the parents

17

were not likely to further improve their condition or conduct in the near future. *See State ex rel. A.C.H.*, 846 So.2d 791. On the contrary, the record reflects that there has been improvement in the stability of the home environment and behaviors of the parents that, we agree, warrant additional time for an evaluation of whether this family situation can be repaired and the goal of reunification can be achieved. As was stated by the first circuit, "reasonable expectation of reformation is found to exist if the parent has cooperated with state officials and has shown improvement, although all of the problems that exist have not been eliminated." *State of Louisiana, In the Interest of G.A., C.A., J.A., C.A.2, and R.A.*, 94-2227, p. 9 (La.App. 1 Cir. 7/27/95), 664 So.2d 106, 113 (citing *State in the Interest of L.L.Z. v. M.Y.S.*, 620 So.2d 1309 (La.1993)). The State did not present any evidence of continued drug use or other criminal activity by either party or a home environment that would alert one's suspicions of such activity, even though the criminal records of both parents, in this regard, were emphasized by the State. The father's recent conviction of a 2002 charge, which occurred prior to the institution of the family case plan, is not clear and convincing evidence of continued drug use. Moreover, although the mother cannot legally take custody of the children, if deemed appropriate, prior to 2007 because of her parole conditions, this, likewise, is not clear and convincing evidence that there can be no expectation of significant improvement in the parents' condition or conduct in the near future, especially in light of her parole officer's testimony regarding her model behavior.

The trial court found that the parents' recent behavior, improvements and expressions of a willingness to change, particularly the mother's, indicated a reasonable expectation of improvement, and in light of the court's duty to take seriously the termination of parental rights, we cannot say that the trial court's

reasoning in this regard is manifestly erroneous. *See State ex rel. A.C.H.*, 846 So.2d 791.

### *The Best Interest of the Children*

Remembering that the paramount interest in termination proceedings is the best interest of the children involved, this final question must also be answered prior to a final ruling being made in involuntary parental termination procedures. *State ex rel. L.B.*, 831 So.2d 918. We have held that termination of a parent's rights is not in the best interest of the children when, even if a parent has failed to comply with the case plan in the past, the parent's recent behavior indicates a reasonable expectation of improvement in the near future. *See State ex rel. A.C.H.*, 846 So.2d 791. Considering this, we find no manifest error in the trial court's reasoning or judgment in this regard.

IV.

## CONCLUSION

The judgment of the trial court dismissing the State of Louisiana, through the Department of Social Service's petition for the termination of the parental rights of G.W.Y. and G.A.Y. is affirmed. All costs of this appeal in the amount of $325.50 are assessed to the plaintiff-appellant, the State of Louisiana, through the Department of Social Services.

**AFFIRMED.**