STATE OF LOUISIANA IN THE INTEREST OF A. T. W.
No. 2009 CJ 2274.
Court of Appeals of Louisiana, First Circuit.
March 26, 2010.
Not Designated for Publication
D. BRUCE CAMERON, Slidell, Louisiana, Counsel for Defendant/Appellant A.W.
ANNE THOMPSON, Covington, Louisiana, Counsel for Appellee State of Louisiana Department of Social Services, Office of Community Services.
WALTER P. REED, District Attorney, By Kathryn Landry, Baton Rouge, Louisiana, Counsel for Appellee, State of Louisiana.
Before: DOWNING, GAIDRY, and McCLEDON, JJ.
GAIDRY, J.
In this case, the biological father of a minor child appeals a trial court judgment terminating his parental rights. We affirm.

FACTS AND PROCEDURAL HISTORY
A.T.W., the minor child of C.W. (mother) and A.W. (father), was born drug-exposed on July 6, 2008. Both C.W. and A.T.W. tested positive for cocaine and opiates at the time of the birth. A.W. and C.W. informed O.C.S. after A.T.W.'s birth that they did not have sufficient supplies to care for A.T.W. once she was discharged from the hospital, that they have allowed drug abusers to live in their home, and that they have no relatives to serve as a support system in the area. A.T.W. was C.W.'s sixth child; the first four children were surrendered for adoption, and the fifth child died while co-sleeping with C.W. and A.W. Although C.W. initially denied the use of illegal drugs and A.W. denied any knowledge of her drug use, C.W. was arrested approximately one month prior to A.T.W.'s birth for possession of cocaine and was also arrested in 2007 for possession of cocaine and drug paraphernalia. Both A.W. and C.W. also have arrest histories in Ohio for drug possession and other offenses.
A.T.W. was placed in the custody of the State pursuant to a July 10, 2008 Instanter Order and was adjudicated a child in need of care on August 5, 2008. On July 6, 2009, the court found that inadequate progress had been made toward alleviating or mitigating the causes necessitating placement in foster care, approved the goal change to adoption, and ordered that the case plan be amended to include treatment for A.W.'s significant antisocial behaviors. A petition for termination of parental rights was filed on July 21, 2009. After a trial on November 3, 2009, both A.W. and C.W.'s[1] parental rights were terminated. The court found that A.W. is not credible, and is angry, defiant, and hostile. The court also found A.T.W. to be thriving in her prospective adoptive placement, and found termination of A.W.'s parental rights to be in A.T.W.'s best interest. The court terminated A.W.'s parental rights pursuant to Louisiana Children's Code article 1015(4)(B) and 1015(5), based on A.W.'s failure to provide significant support for A.T.W. and failure to timely substantially comply with the case plan.
A.W. appealed, arguing that the court erred in finding any grounds for termination of his parental rights because he did substantially comply with his case plan and he did not abandon A.T.W. by failing to provide significant support for her.

DISCUSSION
The permanent termination of the legal relationship existing between natural parents and children is one of the most drastic actions the State can take against its citizens. State ex rel. A.T., 06-0501, p. 4 (La. 7/6/06), 936 So.2d 79, 82. As a result, the legislature has imposed strict procedural and evidentiary requirements that must be met before parental rights can be terminated. State, in Interest of GA, 94-2227, p. 5 (La.App. 1 Cir. 7/27/95), 664 So.2d 106, 110. Although La. Ch. C. art. 1015 sets forth several statutory grounds for involuntary termination of parental rights, the State is only required to prove the existence of one ground. State ex rel. SNW v. Mitchell, 01-2128, p. 10 (La. 11/28/01), 800 So.2d 809, 816. However, the State is required to establish each element of a statutory ground for termination of parental rights by clear and convincing evidence. La. Ch.C. art. 1035(A); See State ex rel. A.T., 06-0501 at p. 5, 936 So.2d at 82. To prove a matter by clear and convincing evidence, the State must demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. State in Interest of BJ, 95-1915, p. 9 (La.App. 1 Cir. 4/4/96), 672 So.2d 342, 348, writ denied, 96-1036 (La. 5/31/96), 674 So.2d 264. Even upon finding that the State has met its burden of establishing a statutory ground for termination by clear and convincing evidence, a court still should not terminate parental rights unless it further determines that termination is in the best interests of the child. La. Ch.C. art 1039(B); State ex rel. A.T., 06-0501 at p. 5, 936 So.2d at 82.
The factual findings made by the court in determining whether the requirements of La. Ch.C. art. 1015 have been satisfied will not be set aside in the absence of manifest error. State ex rel. SNW, 01-2128 at p. 10, 800 So.2d at 816; State in Interest of BJ, 95-1915 at p. 9, 672 So.2d at 348. Under the manifest error standard of review, an appellate court may not reverse a factfinder's determinations unless it finds from the record that a reasonable factual basis does not exist for the findings and that the record establishes the findings are manifestly erroneous or clearly wrong. See Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993); State, In Interest of GA, 94-227 at p. 4, 664 So.2d 106 at 110.
The trial court based its decision to terminate A.W.'s parental rights upon its finding of two grounds for termination: La. Ch. C. art. 1015(4)(b) and art. 1015(5). Article 1015(4)(b) provides that parental rights may be terminated where the parent has abandoned the child by placing her in the physical custody of a nonparent, or the department, or by otherwise leaving her under circumstances demonstrating an intention to permanently avoid parental responsibility by failing to provide significant contributions to the child's care and support for any period of six consecutive months. Article 1015(5) provides for termination where at least one year has elapsed since the child was removed from her parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and her need for a safe, stable, and permanent home.

La. Ch. C. Art. 1015(4)(b)
A.W. claims that the court erred in finding that the State carried its burden of proving the existence of the grounds for termination set forth in La. Ch. C. art. 1015(4)(b), i.e., that he abandoned A.T.W. under circumstances demonstrating an intention to permanently avoid parental responsibility by failing to provide significant contributions to A.T.W.'s care and support for a period of six consecutive months. Because they are in derogation of a parent's natural rights, the jurisprudence has long held that abandonment statutes must be strictly construed. See Henderson v. Spears, 292 So.2d 801, 803 (La. App. 1 Cir. 1974); State in Interest of a Little Boy, 473 So.2d 858, 860 (La. App. 4th Cir. 1985). See also Rodriguez v. Louisiana Medical Mutual Insurance Company, 618 So.2d 390, 394 (La. 1993) (a statute in derogation of natural rights must be strictly construed and not extended beyond its obvious meaning).
A.W. argues on appeal that in order for the State to prove the existence of the grounds for termination set forth in La. Ch. C. art. 1015(4)(b), they must prove both that he abandoned A.T.W., that is, that he voluntarily left her, and that he failed to contribute significantly to her support. He alleges that since he did not voluntarily place A.T.W. in the custody of the department or a nonparent, the State cannot seek to terminate his rights under article 1015(4)(b). However, proof of abandonment under article 1015(4)(b) does not require the child to be voluntarily left; abandonment may also be proven by "leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by .. . fail[ing] to provide significant contributions to the child's care and support for any period of six consecutive months." A.W. does not dispute on appeal that he failed to provide "significant contributions." The case manager testified that A.W.'s only two support payments were made in October and November of 2009, despite the fact that A.W. cited his work schedule as the reason he was unable to attend scheduled visits with A.T.W. A.W. testified that he would not consider the two payments he did make "significant." As such, the trial court did not err in concluding that the State proved the grounds for termination listed in article 1015(4)(b).

La. Ch. C. Art. 1015(5)
Although the State only has to prove one statutory ground for termination of parental rights, we will nonetheless discuss the second ground for termination alleged by the State, i.e., that more than one year since the child entered the State's custody, there has been a lack of substantial compliance with the case plan and no reasonable expectation of significant improvement in the near future, considering the child's age and need for a safe, stable, and permanent home. La. Ch.C. art. 1015(5). Whether there has been adequate proof of A.W.'s lack substantial compliance with his case plans, the success of his rehabilitation, and the expectation of significant improvements in his condition are all questions of fact. On review, these factual findings of the trial court will not be set aside absent manifest error. State ex rel E.E.M., 99-1458 (La.App. 1 Cir. 9/24/99); 754 So.2d 1028.
In support of his argument that he substantially completed his case plan, A.W. claims that he maintained adequate housing, addressed his mental health issues, addressed substance abuse issues, and maintained a relationship with A.T.W. However, the evidence contained in the record simply does not support A.W.'s assertions.
Despite the fact that A.W.'s case plan required him to keep a clean and stable home in safe condition containing necessary supplies such as a baby bed, bottles, diapers, and carseat, A.W. refused to obtain these items, claiming that he would get them on the day A.T.W. comes to live with him.
A.W. claims that he addressed his mental health issues by completing a psychological evaluation with Dr. Rafael Salcedo and participating in anger management classes with Donna Hulsey, LCSW, and that no further treatment was recommended by Salcedo and Hulsey. However, Hulsey's report paints a different picture. She states that during the four months that she worked with A.W. on anger management, he missed four sessions and completed only one homework assignment. He did not respond to any of Hulsey's suggestions regarding anger management or how he communicated with others, even when she linked her suggestions to completing his case plan and regaining custody of A.T.W. He consistently denied that there was a problem. Hulsey reported that A.W. was hostile and intimidating, questioned her credentials, and used other insults during most sessions. As a result of his lack of effort, she elected to end therapy after four months. A.W. did in fact submit to a psychological evaluation by Dr. Salcedo. However, Dr. Salcedo described him as hostile, defensive, and evasive, and recommended that A.W. not be considered as a placement resource for his daughter at that time.
Although visitation between A.W. and A.T.W. was scheduled once a week initially and then biweekly, A.W. first attended a scheduled visit with his child on December 22, 2008, when she was six months old. He attended a total of four visits in the first nine months of A.T.W.'s life. The case manager testified that when A.W. did visit with A.T.W., it was very difficult because A.W. was a stranger to her and there appeared to be no bond between them. A.T.W. would cry inconsolably during the majority of the visits, and A.W. showed no empathy towards her when she cried. Although his case plan called for A.W. to bring supplies to care for A.T.W. to the visits, he did not start bringing food until May 2009, when A.T.W. was nearly a year old, and he did not bring any clothing or additional items to any of his visits with her.
After a thorough review of the record, we find no manifest error in the trial court's conclusion that A.W. failed to substantially comply with his case plan and that no reasonable expectation exists for significant improvement in the near future, considering A.T.W.'s age and need for a safe, stable, and permanent home.

CONCLUSION
The judgment of the trial court terminating A.W.'s parental rights to A.T.W. is affirmed. Costs of this appeal are assessed to appellant, A.W.
AFFIRMED.
DOWNING, J., concurs and assigns reasons
I agree that the trial court properly terminated A.W.'s parental rights pursuant to LA. Ch.C. art. 1015. Accordingly, I concur with the majority opinion.
I find La. Ch.C. art. 1015(4)(b) to be problematic as a grounds for termination under the facts of this case. La. Ch.C. art. 1015(4)(b), regarding abandonment, provides as follows:
(4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
* * *
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
Here, the Department of Social Services, Office of Community Services developed a case plan instructing A.W. on the requirements for reunification with his child. Not included in these requirements was the payment of any support. Thus, I am greatly troubled that the Department now seeks to use non-payment of contributions for the child's care as a basis for terminating his rights. Conversely, the record reflects that A.W. was under an obligation to pay child support, which he did not do.
Still, under these circumstances, I find it difficult to conclude that A.W. left A.T.W. "under circumstances demonstrating an intention to permanently avoid parental responsibility" by failing to provide significant support as required under La. Ch.C. art. 1015(4)(b) when a support requirement is not included in his case plan promulgated by the Department.
Even so, we need not decide this issue since I agree that grounds were proven pursuant to La. Ch.C. art. 1015(5). Accordingly, I concur.
NOTES
[1] This appeal involves only the termination of A.W.'s parental rights.