STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2023 CJ 0655

STATE OF LOUISIANA IN THE INTEREST OF A.B. AND E.B.

JUDGMENT RENDERED: **JAN 1 9 2024**

* * * * * * *

Appealed from the City Court of Denham Springs
Parish of Livingston • State of Louisiana
Docket Number J-12050-1 • Juvenile Division

The Honorable Jerry L. Denton, Jr. • Presiding Judge

* * * * * * *

| | |
|---|---|
| Jane Hogan<br>Rebecca D. Lee<br>*Louisiana Public Defender Board,*<br>*Child in Need of Care Appellate Project*<br>Livingston, Louisiana | COUNSEL FOR APPELLANT<br>MINORS' FATHER—R.B. |
| Alice Montestruc<br>*Mental Health Advocacy Service (MHAS),*<br>*Child Advocacy Program*<br>Livingston, Louisiana | COUNSEL FOR APPELLEES<br>MINOR CHILDREN—A.B. and E.B. |
| Laura G. Slocum<br>Livingston, Louisiana | COUNSEL FOR APPELLEE<br>The Louisiana Department of<br>Children and Family Services<br>(DCFS) |
| Scott M. Perrilloux<br>*District Attorney*<br>Brad J. Cascio<br>*Assistant District Attorney*<br>Livingston, Louisiana | COUNSEL FOR APPELLEE<br>The State of Louisiana |

* * * * * * *

BEFORE: WELCH, HOLDRIDGE,[1] LANIER, WOLFE, AND HESTER, JJ.

---

[1] The Honorable Guy Holdridge, retired, is serving as judge *pro tempore* by special appointment of the Louisiana Supreme Court.

**WELCH, J.**

The father of two minor children appeals a judgment that terminated his parental rights and freed his two minor children for adoption.[2] For the following reasons, we vacate and remand.

## FACTS AND PROCEDURAL HISTORY

R.B. is the biological father of A.B. (born February 26, 2017) and E.B. (born March 2, 2020). On March 30, 2021, R.B. and the children's mother (B.B.) were arrested for possession of heroin and drug paraphernalia while the children were in the car with them. As a result, the State took A.B. and E.B. into custody by instanter order and placed them in the care of their paternal grandmother (R.B.'s mother is referenced herein as "the grandmother").[3] The city court adjudicated the children in need of care on May 13, 2021, pursuant to stipulations by the parents without admissions to the supporting allegations.

The Louisiana Department of Children and Family Services ("DCFS") developed a case plan approved by the city court and finalized on April 29, 2021, that set forth the basic requirements for each parent to achieve the goal of reunifying the children with them. The April 29, 2021 case plan required that R.B. and the children's mother submit to a substance abuse assessment and follow all recommendations; maintain legal employment; resolve pending criminal matters; submit to random drug screens; participate in couple's counseling; maintain safe and stable housing; regularly visit with case workers; pay $100 monthly toward the cost

---

[2] The same January 12, 2023 judgment terminated the mother's (B.B.) parental rights; however, the mother has not appealed. The judgment is final as it relates to the termination of the mother's parental rights. See **State in Interest of B.B.M.**, 2021-1359 (La. App. 1st Cir. 6/16/22), 2022 WL 2168939, *2 n.7 (unpublished), writ denied, 2022-01023 (La. 9/7/22), 345 So.3d 431.

[3] The affidavit submitted in support of the instanter order represented that the parents had "extensive history" with DCFS, which dated back to 2008. In 2017, DCFS intervened in this matter, and the mother voluntarily surrendered her parental rights to an older child, after A.B. tested positive for opiates at birth.

2

of the children's care; and maintain regular contact with the children according to a visitation plan.

In advance of a scheduled review hearing of the April 29, 2021 case plan, DCFS reported to the city court that neither parent had started or completed any of the case plan goals, and that the parents had not demonstrated behavioral changes to achieve a stable and substance-free lifestyle. DCFS informed the city court that, according to the grandmother, the parents overdosed on heroin at their home on August 18, 2021, causing them to be evicted and homeless. After the October 14, 2021 review hearing, the city court ordered that the children remain in state custody with the goal of reunification. The city court ordered the parents to comply with the requirements of the updated case plan, finalized on September 1, 2021, which included the same parental requirements.

On November 29, 2021, the children were placed together in a certified foster home because their grandmother expressed to DCFS that she was unable to care for the children long term.[4] Prior to the next review hearing, both parents were again arrested and incarcerated. DCFS reported that neither parent had completed the case plan, although R.B. did make one $200 payment to the grandmother for the children's care.[5] DCFS recommended that the permanency goal for the children be changed from reunification with the parents to adoption. After the March 10, 2022 review hearing, the city court ordered that the children remain in state custody in their current foster home placement and changed the case plan goal from reunification to adoption.

On June 8, 2022, DCFS filed a petition to terminate the parents' parental rights and certify the children for adoption. DCFS alleged two grounds for the termination

---

[4] The children were placed with the grandmother from the date of removal, March 30, 2021, through November 28, 2021.

[5] DCFS reported that the payment went directly to the grandmother because she was not a certified caregiver.

3

of R.B.'s parental rights. First, DCFS alleged that R.B.'s parental rights should be terminated pursuant to La. Ch. Code art. 1015(5)(b),[6] for failing "to provide significant contributions to the child[ren]'s care and support for any period of six consecutive months" (one of the "abandonment" grounds for termination). Second, DCFS alleged that R.B.'s parental rights should be terminated pursuant to La. Ch. Code art. 1015(6), for his failure to substantially comply with the case plan and there being "no reasonable expectation of significant improvement" in R.B.'s condition or conduct in the near future (the "substantial compliance with the case plan" ground for termination).[7]

The termination of parental rights hearing was held on December 1, 2022. At the hearing, R.B. testified. R.B. described his opioid addiction, which began after he sustained injuries while in the military. R.B. testified that he was sober from 2011 until 2015 or 2016, when he sustained injuries in a car accident that led him to resume taking opioids to manage his pain. R.B. acknowledged that he has been incarcerated three times in relation to the possession of heroin charge that led to the children being taken into state custody on March 30, 2021. R.B. indicated that his criminal charges were resolved with a final guilty plea to possession of drug paraphernalia, with credit for time served. R.B. confirmed that while incarcerated, he had been in contact with DCFS and received copies of the case plans.

---

[6] This matter was decided under the prior version of La. Ch. Code art. 1015, before its amendment by 2023 La. Acts No. 271, § 1 (eff. June 9, 2023).

[7] The petition alleged that the mother's (B.B.) parental rights should be terminated based on three grounds: (1) abandonment under La. Ch. Code art. 1015(5)(b) (failure to provide significant contributions to the children's care and support for any period of six consecutive months); (2) significant contact under La. Ch. Code art. 1015(5)(c) (failure to maintain significant contact with the children for any period of six consecutive months); and (3) substantial case plan compliance under La. Ch. Code art. 1015(6) (failure to substantially comply with the case plan and there being no reasonable expectation of significant improvement in the parent's condition or conduct). Since the mother has not appealed the city court's January 12, 2023 judgment, we will not detail the testimony adduced at the hearing on which the city court based its decision to terminate the mother's parental rights to the children.

R.B. testified that he has always worked on his sobriety, and had particularly done so in 2022, motivated by his love for his children. R.B. explained that after his release from jail on June 13, 2022, he entered a residential detox treatment program at The Grove, which he completed on August 5, 2022. Immediately thereafter, R.B. entered the church-based sober living program, Life House, located in St. James Parish. While at Life House, R.B. voluntarily participated in and successfully completed an intensive outpatient addiction treatment program, while also taking part in individual and group therapy sessions. R.B. testified that he submitted to routine random drug screens as part of the Life House program and had not failed any drug tests.

R.B. confirmed that he intended to complete the year-long Life House program, which generally did not allow men to have children live with them. R.B. explained that if custody was returned to him, he would continue making progress toward his sobriety and working, relying on the grandmother or a daycare provider to babysit the children. R.B. stated that he had a good relationship with the children's foster parents and that he had visited with the children as allowed by the case plan. During the visits, R.B. testified that he provided the children with snacks and gifts, including balls, sidewalk chalk, and a learning tablet.

R.B. also participates in Life House's job training program. R.B. testified that through his employment with Life House Staffing, he is able to work full-time at a scaffolding company. From his earnings, R.B. pays Life House $840 per month "to stay there," leaving approximately $440 from which he pays set rates for transportation and other living expenses. R.B. stated that Life House provides him with breakfast and dinner, but he is responsible for buying clothes and toiletries and paying his cell phone bill with his $440 monthly income. R.B. testified that his monthly income was frequently much less during the months he had to attend court, as he is charged $30 plus $6 per mile for transportation. R.B. added that after six

months with Life House's job program, he would be allowed to obtain employment directly from other employers, which he believed would enable him to earn more money.

Regarding his financial contributions to the children's care and support, R.B. testified that he had not contributed "as much as I'd ... like." R.B. testified that while he was incarcerated, he had no income and was unable to pay contributions towards his children's care. R.B. testified that when his children were placed with their grandmother, he tried to give her money, but she always refused to accept his payments. R.B. confirmed that only one $200 payment was made to and accepted by the grandmother. R.B. explained that he had "cash in [his] pocket" at every visit and would offer to pay the contributions, but DCFS would not accept cash payments, instead requiring him to pay via money orders. R.B. stated that he had difficulty obtaining money orders. R.B. testified that he now had "money set aside in a bank account right now...." R.B. testified that he would make all back-payments for the financial contributions required under the case plan for his children's care and support.

Samantha Cascio, the DCFS caseworker assigned to this matter, also testified at the hearing. Ms. Cascio indicated that R.B. was currently in compliance with his case plan and had been in compliance since July 2022. Ms. Cascio stated that DCFS was requesting termination of R.B.'s parental rights on the grounds of abandonment based on R.B.'s failure to provide financial contributions for a period of six consecutive months. She stated that the children—who were two and almost five years of age on the date of the hearing—had been in state custody for twenty-one months. Ms. Cascio testified that R.B. was assessed parental contributions in the amount of $100 per month, but that he had made only one payment of $200 on October 25, 2021. Ms. Cascio confirmed that R.B. began living at Life House in August 2022, and that children were not allowed to live there. Ms. Cascio also

6

confirmed that R.B. visited with his children as allowed, stating that the children were always excited to see R.B. and "enjoy visiting with him." Although she acknowledged that R.B. had begun to work the case plans, Ms. Cascio stated DCFS's position was that termination of R.B.'s parental rights was in the best interests of the children.

The Court Appointed Special Advocates ("CASA") worker assigned to the case, Christina Green, similarly acknowledged that R.B. had made progress regarding the case plan. However, she noted that R.B. had previously been unable to maintain his sobriety for longer than six months. Ms. Green agreed with DCFS that it was in the children's best interests for parental rights to be terminated due to R.B.'s inability to maintain sobriety, lack of adequate housing for the children, and lack of a support system beyond the grandmother. Ms. Green recognized that R.B. loved his children and was making progress on the case plans, but recommended adoption for the children.

At the conclusion of the hearing, the city court took the matter under advisement. The city court thereafter issued written reasons, finding that DCFS proved a ground for terminating R.B.'s parental rights, specifically, that R.B. abandoned his children under La. Ch. Code art. 1015(5)(b), for failing to provide significant contributions to the children's care for a period of six consecutive months, prior to the single $200 payment, and again thereafter. The city court further found that the termination of R.B.'s parental rights would be in the best interests of the children. In accordance with those reasons, the city court signed a judgment on January 12, 2023, terminating R.B.'s parental rights and freeing the children for adoption.[8] R.B. now appeals.[9]

---

[8] As previously noted, the mother (B.B.) has not appealed; therefore, the termination of her parental rights is not at issue herein.

[9] R.B. filed a motion for appeal and designation of record on January 26, 2023. The city court signed an order of appeal on January 31, 2023.

## LAW AND DISCUSSION

Termination of the legal relationship between natural parents and children is one of the most drastic actions the State can take against its citizens. **State in Interest of A.L.D.**, 2018-1271 (La. 1/30/19), 263 So.3d 860, 863. The interests of the parents and children must be balanced; however, the paramount consideration is the best interest of the children. **State in Interest of C.F.**, 2017-1054 (La. 12/6/17), 235 So.3d 1066, 1075. Thus, rather than simply protecting parental rights, our judicial system must protect the rights of children to thrive and survive in a safe, secure environment and to be reared by someone capable of caring for them. **Id.** To protect children whose parents are unwilling or unable to provide safety and care adequate to meet their physical, emotional, and mental health needs, the Louisiana Children's Code provides a judicial process for terminating the parents' rights and responsibilities and certifying the children for adoption. La. Ch. Code art. 1001.

Louisiana Children's Code article 1015 enumerates the grounds for the involuntary termination of parental rights. The State must prove the elements of at least one of the statutory grounds for termination by clear and convincing evidence. See La. Ch. Code art. 1035(A); **State in Interest of C.F.**, 235 So.3d at 1072. That is, the State must prove that the existence of the ground for termination is highly probable or much more probable than its nonexistence—more than proof by a preponderance of the evidence, but less than proof beyond a reasonable doubt. **In re L.M.M., Jr.**, 2017-1988 (La. 6/27/18), 319 So.3d 231, 244 n.13.

If the court finds that the State has met its burden of proving one of the grounds for termination by clear and convincing evidence, the court must then determine whether termination is in the best interests of the children. La. Ch. Code art. 1039; **State in Interest of A.L.D.**, 263 So.3d at 863. To summarize, involuntary termination of parental rights is a two-pronged inquiry. First, the State must prove by clear and convincing evidence the existence of at least one of the eight statutory

8

grounds for termination under La. Ch. Code art. 1015. Second, after the ground for termination is found, the court must determine whether the termination is in the child's best interests. La. Ch. Code art. 1039; **State ex rel. L.B. v. G.B.B.**, 2002-1715 (La. 12/4/02), 831 So.2d 918, 922.

These factually-intense determinations are reviewed on appeal under the manifest error standard. **State ex rel. H.A.B.**, 2010-1111 (La. 10/19/10), 49 So.3d 345, 368; **State in Interest of A.D.**, 2020-1298 (La. App. 1ˢᵗ Cir. 6/4/21), 327 So.3d 1032, 1034. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. **Zito v. Advanced Emergency Medical Services, Inc.**, 2011-2382 (La. 5/8/12), 89 So.3d 372, 375 (citing **Stobart v. State, Dep't of Transp. and Dev.**, 617 So.2d 880, 882 (La. 1993)). If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. **Zito**, 89 So.3d at 375 (citing **Stobart**, 617 So.2d at 882-83).

In this case, the city court found that DCFS proved grounds for terminating R.B.'s parental rights under La. Ch. Code art. 1015(5)(b). The city court held that "DCFS has met the requisite burden of proof to establish the existence of abandonment and warrant termination of parental rights under Article 1015(5)(b)." Louisiana Children's Code article 1015(5)(b)[10] provides for termination on the basis of:

> (5) Abandonment of the child[ren] by placing [them] in the physical custody of a nonparent, or the [custody of the state], or by otherwise leaving [them] under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
>
> * * *

---

[10] After its amendment by 2023 La. Acts No. 271, § 1 (eff. June 9, 2023), this ground is now set forth in La. Ch. Code art. 1015(4)(b).

9

> (b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child[ren]'s care and support for any period of six consecutive months.

To prove abandonment on the basis of failing to provide significant contributions to the children's care and support, DCFS need not prove that the parent voluntarily placed the children in state custody. **State ex rel. A.T.W.**, 2009-2274 (La. App. 1ˢᵗ Cir. 3/26/10), 2010 WL 1170262, *2 (unpublished). Rather, abandonment may be proven by establishing that the parent left the children under circumstances demonstrating an intention to permanently avoid parental responsibility by failing to provide significant contributions to the children's care and support for any consecutive six-month period. **Id.**

Although termination of parental rights requires a two-prong inquiry, we find it unnecessary in this case to address the first prong, regarding the statutory grounds for termination under La. Ch. Code art. 1015(5)(b), given our finding on the second prong. See, e.g., **State in Int. of T.M.P.**, 2013-1006 (La. App. 4ᵗʰ Cir. 10/23/13), 126 So.3d 741, 756-57. We agree that DCFS proved a statutory ground for terminating R.B.'s parental rights under La. Ch. Code art. 1015(5)(b) for abandonment on the basis of failing to provide significant contributions to the children's care and support for any period of six consecutive months by clear and convincing evidence. However, proof of a statutory ground for termination of parental rights under La. Ch. Code art. 1015 does not give rise to a presumption that termination is in the child's best interests. **State in Int. of T.M.P.**, 126 So.3d at 757-58. On the second prong, we find manifest error in the city court's factual finding that terminating R.B.'s parental rights at this juncture is in the children's best interests.

After the statutory ground for termination under La. Ch. Code art. 1015 is found, the court must determine whether termination is in the child's best interests. **State in Int. of C.A.C.**, 2011-1315 (La. App. 4ᵗʰ Cir. 2/1/12), 85 So.3d 142, 147,

writ denied, 2012-0388 (La. 3/7/12), 83 So.3d 1048. The law poses the best interest determination as a separate consideration and envisions examination of any special conditions or exceptional circumstances that may exist. **State in Interest of D.G. v. Danny G.**, 30,196 (La. App. 2nd Cir. 10/29/97), 702 So.2d 43, 45. In this matter, the record before us contains facts that support a finding that the city court manifestly erred on the best interest determination.

Based on the record before us, we cannot reasonably conclude from the facts presented therein that R.B. has ever demonstrated an intention to permanently avoid parental responsibility. See **State ex rel. A.T.W.**, 2010 WL 1170262 at *2. It is clear that at the time the case plan was first presented to him in April 2021, R.B. was indigent and could not afford to pay the $100 monthly contribution or make "significant, measurable progress" towards his case plan due to his drug addiction and incarceration.

The record shows that R.B. has made progress, albeit only since July 2022, in completing the requirements of his case plan. Recent compliance with a case plan can support a finding that it is in the best interests of the children not to terminate a parent's rights. See **State ex rel. A.C.H.**, 2002-1014 (La. App. 3rd Cir. 2/12/03), 846 So.2d 791, 796-97, writ denied, 2003-0566 (La. 3/14/03), 839 So.2d 50. Indeed, Ms. Cascio, the DCFS caseworker, testified that since July 2022, R.B. has been in compliance with his case plan. R.B. regularly visits his children in accordance with the case plan and foster care guidelines. During these visits, R.B. has provided the children with snacks and gifts, including balls, sidewalk chalk, and a learning tablet. Ms. Cascio testified that R.B.'s children were always excited to see him, hug him, and play with him during visits. Ms. Green, the CASA worker, testified that R.B. "loves his children dearly[,] and he's doing a wonderful job[.]"

There is no dispute that R.B. has shown a willingness by his behavior to overcome his substance abuse problems, in compliance with his case plan. R.B. is

11

now sober, having completed a residential detox treatment program and currently living in a church-based sober living program, where he successfully completed an intensive outpatient addiction treatment program. R.B. testified that he intends to complete a year-long stay at his sober living program and continue making progress toward his sobriety.

R.B. is also currently employed through his sober living program, with the option for future employment with other employers. R.B. indicated that after he completed his sober living program, the money he has made from working could be used as a "down payment" on a residence. R.B. further testified that he now had a bank account and could make all back-payments for the financial contributions required under the case plan for his children's care and support.

Louisiana Children's Code article 1015(5) does not impose a strict timeframe with regards to "significant improvement in the parent's condition or conduct," nor do alleged violations of Article 1015 create presumptions in favor of the State. **State ex rel. S.L.W.**, 2006-1560 (La. App. 4th Cir. 4/18/07), 958 So.2d 53, 57, <u>writ denied,</u> 2007-0933 (La. 6/1/07), 957 So.2d 183. Rather, the focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parent to be terminated. La. Ch. Code art. 1001. Thus, the fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parent is unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. <u>See</u> **State ex rel. S.L.W.**, 958 So.2d at 57-58. But, because the permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic

12

actions the State can take against its citizens, the courts must proceed with extreme care and caution. **State ex rel. J.A.**, 99-2905 (La. 1/12/00), 752 So.2d 806, 811.

R.B. no longer has any obstacles such as incarceration, substance abuse, or unemployment that would hinder his compliance with his case plan, or prevent the formulation of additional case plans to give him added time to comply. R.B.'s current compliance with his case plan furthers the goal of reunification with his children and does not result in the children remaining in the State's custody for an indefinite period of time. R.B.'s recent behavior shows a reasonable expectation of significant improvement in his condition in the near future. While the prolonged proceedings in this case are problematic, terminating R.B.'s parental rights and certifying the children for adoption at this time is not in the children's best interests. After a careful review of the record, we find that the city court was manifestly erroneous in granting DCFS's termination petition as to R.B. at this time. See *e.g.*, **State in Int. of M.W.**, 23-4 (La. App. 5th Cir. 5/23/23), 366 So.3d 769, 775 (The trial court's finding that termination of the father's parental rights was not in the child's best interest was not manifestly erroneous, even though at the time of trial, the child had been in the custody of DCFS for 22 months, and the father had not made any substantial progress toward completion of his case plans. The father had shown an interest in being a part of child's life and had visited child.); **State ex rel. A.C.H.**, 846 So.2d at 798 (Termination of a mother's parental rights was not in the best interest of her children. Even though she failed to comply with her case plan in the past, her recent behavior indicated reasonable expectation of improvement; the supervisor at the shelter in which the mother was living testified that she believed the mother had a sincere desire and willingness to change, and the mother had begun to comply with case plan six weeks prior to trial.); **State ex rel. A.T.**, 2006-0501 (La. 7/6/06), 936 So.2d 79, 86 (Although the mother initially failed to pay her support obligation for eleven months, thereafter, she maintained a steady stream of

13

jobs and paid child support through garnishments of $66 per month per child. The mother attended all visitations with the children except one, passed all drug screens, and attended a spousal abuse program.).

## DECREE

Based on the foregoing, we vacate the portions of the city court's January 12, 2023 judgment that terminated the parental rights of R.B. and certified his minor children, A.B. and E.B., for adoption. We remand this matter for all necessary proceedings consistent with this opinion. All costs of this appeal, in the amount of $378.00, are assessed to the Louisiana Department of Children and Family Services ("DCFS").

**VACATED; REMANDED.**

| STATE OF LOUISIANA | STATE OF LOUISIANA |
|---|---|
| | COURT OF APPEAL |
| IN THE INTEREST OF | FIRST CIRCUIT |
| A.B. AND E.B. | 2023 CJ 0655 |



**Holdridge, J., assigning additional reasons.**

I agree with the majority opinion. I write further to acknowledge that the current procedures in the Louisiana Children's Code and the court of appeal rules did not protect the best interest of the minor children in this case. A judgment was rendered on January 12, 2023, terminating R.B.'s parental rights. Over a year later, this court is rendering its opinion. At oral argument, this court was informed that the facts of this case have changed. According to counsel for the Department of Children and Family Services, the children are in the physical custody of R.B.'s mother. The Department of Children and Family Services would like to do a guardianship arrangement under La. Ch.C. arts. 718, *et seq.* with R.B.'s mother and to close its file in this case. In reality, the appellate delay is the only obstacle to this child in need of care case being closed in the best interest of the minor children. Furthermore, this court is having to draft an opinion based on facts that no longer exist. Both the legislature and this court should enact laws and rules to ensure that appeals of child in need of care cases are completed within thirty days[1] and that the court is promptly notified of any changes involving the children, the parents, or their placement.[2] Appeals should not be a barrier from protecting the best interests of minor children in child in need of care cases.

---

[1] For example, the legislature has expedited appeals in election suits in the interest of the electorate. See La. R.S. 18:1409.

[2] The Louisiana Children's Code provides in several articles in the Child in Need of Care title (Title VI) that any persons directly affected may appeal the findings or orders of the court with case review hearings and permanency hearings. La. Ch.C. arts. 700, 710(D). Because parties are advised to appeal unfavorable findings or orders, they are subject to Louisiana Code of Civil Procedure articles and appellate court rules. See La. C.C.P. arts. 2081-2168; Uniform Rules –

Courts of Appeal, Rules 5-1-5-3; Local Rules of the Court of Appeal, First Circuit, Rule 9. However, as is demonstrated in this case, even with this court's compliance with the rules providing for expeditious treatment of child in need of care cases, the inherent delays result in untimely decisions.